126 F.3d 1035
 45 ERC 1385, 28 Envtl. L. Rep. 20,201
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert R. KRILICH, Krilich Companies, Inc., Riverwoods
Development Corp., Lakemoor Country Club, Inc., Austin State
Bank Trust, not individually, but as Trustee under the Trust
Agreement dated December 18, 1968 and known as Trust No.
4580, Manufacturers' Affiliated Trust Co., not individually,
but as Trustee under the Trust Agreements dated July 30,
1982 and known as Trust Nos. 866 and 867, f/k/a Affiliated
Bank/Franklin Park f/k/a First State Bank & Trust of
Franklin Park, Defendants-Appellants.
 No. 96-3730.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 3, 1997.
Decided Oct. 15, 1997.
 
 James J. Kubik, Office of the United States Attorney, Civil Division, Appellate Section, Chicago, IL, Robert L. Klarquist, John T. Stahr, Albert M. Ferlo, Department of Justice, Land & Natural Resources Division, Washington, DC, David A. Carson (argued), United States Department of Justice, Environment & Natural Resources Division, Denver, CO, for Plaintiff-Appellee.
 Maureen Martin (argued), Johnine J. Brown, Brownmartin P.C., Chicago, IL, for Defendants-Appellants.
 Before CUMMINGS, COFFEY, and EVANS, Circuit Judges.
 TERENCE T. EVANS, Circuit Judge.
 
 
 1
 Robert Krilich and certain corporations he controls are developers of property near Chicago. In 1992, when Krilich allegedly filled in wetlands without a permit, he ran into trouble with the United States Environmental Protection Agency, which called him on the carpet for violating the Clean Water Act, 33 U.S.C. § 1257 et seq. Krilich entered into a consent decree with the government on August 7, 1992. In the decree he agreed to construct new wetlands, to pay a fine of $185,000, and to face the possibility of daily penalties if he didn't get the job done on time. Because the wetlands were not completed according to the timetable set out in the decree, the government filed a motion for enforcement. The motion was granted in part by the district court and judgment was entered in the form of daily penalties against Krilich totaling approximately $1.3 million. Krilich appeals.
 
 
 2
 As is relevant to this appeal, Krilich was required to create a 3.1 acre wetland mitigation site at a development called Royce Renaissance. The consent decree set out a schedule for the construction of the site: by March 1, 1993, excavation and grading were to begin; by March 31, excavation was to be completed as was the installation of a flow control structure; by May 15, the planting in the mitigation area was to be completed. Krilich was to pay a penalty of $2,500 per day, which is one-tenth of the statutory maximum, for failure to meet certain deadlines, including the planting deadline, which had been set to take advantage of the growing season.
 
 
 3
 The decree had a force majeure provision, saying that timely performance would be excused if a delay was occasioned by a cause beyond the control of, and without fault of, Krilich. Changed business conditions, economic circumstances, or increased costs were not to be considered force majeure events. Krilich was to notify the EPA within three business days of the knowledge of the commencement of any force majeure event. If the EPA agreed that compliance should be excused under this provision, it was to notify Krilich in writing. If the parties could not agree whether the provision applied, either could petition the court for relief.
 
 
 4
 The consent decree also specifically stated that it was the entire agreement between the parties and that no oral statement made by any party or its agents was binding. Any modification of the decree, it clearly said, had to be in writing.
 
 
 5
 Krilich claims that construction could not have started or been completed in a timely manner because of both too much and too little water. There was an enormously wet June, preventing, Krilich says, grading and excavation. We note, however, the obvious fact that June was beyond the May deadlines. The more serious problem was the opposite; the run-off from the development did not provide sufficient water to make a wetland. Furthermore, there was concern that if the plan for the development of the surrounding area was altered, then the source of the water Krilich planned to use might not be there. The problem of a lack of water, especially, did not receive a sympathetic ear from the EPA. In the Agency's view, the agreement was that the development of the upland site had to be done in a manner which would ensure sufficient run-off. As the EPA put it, the agreement was that the wetland "will drive the upland design, not vice versa."
 
 
 6
 Krilich attempted on countless occasions to obtain extensions of the deadlines and to gain approval of an alternative plan for creation of the wetlands. The plans were eventually altered and approved, and the site has now been constructed. The issue before us is whether the district court properly ordered Krilich to pay the stipulated daily penalty of $2,500 for failing to meet the deadline in the consent decree.
 
 
 7
 Krilich argues that through its course of conduct the government modified the consent decree and, in effect, extended the deadlines. The government disagrees and points out that, by its own terms, the decree says all modifications must be in writing.
 
 
 8
 It is undisputed that there were no written modifications of the consent decree. On March 25, 1993, Krilich's attorney wrote to the EPA project coordinator, the EPA attorney, and a U.S. Department of Justice attorney requesting an extension of time in accordance with the force majeure provisions. On April 2, 1993, the EPA attorney sent Krilich a letter denying the claim of force majeure. Krilich did not petition the court for resolution of the dispute. Equally telling is the fact that in other letters the government consistently said that the deadlines would not be modified. For instance, in a letter dated April 16, 1993, an attorney from the U.S. Department of Justice wrote, "I can see no reason for EPA to extend the specified deadlines...." On May 21, 1993, in discussing a new plan, the parties discussed the daily penalty which would accrue and the possibility of a fixed amount in place of continually accruing stipulated daily penalties. Krilich's failure to pursue written modifications of the agreement, especially in the face of clear statements by the government that it was not relieving him of deadlines, dooms any argument that the decree was modified.
 
 
 9
 Krilich also says, however, that for purposes of enforcement actions, consent decrees are interpreted according to contract law, and under Illinois law the doctrine of impossibility and frustration supports his position. The doctrine is relevant when events occur which the parties could not have anticipated, which render performance impossible, and which frustrate the object of the contract. The lack of a sufficient source of water, Krilich says, created a "vitally different" situation from that which the parties contemplated.
 
 
 10
 The doctrine of impossibility and frustration is akin to the force majeure provisions in the decree. Yet Krilich never tried to establish force majeure by returning to court, as the consent decree allowed. We decline to let Krilich try to do through the back door that which he did not attempt to do through the front door.
 
 
 11
 Finally, Krilich contends that because the EPA negotiated with Krilich over a new construction design once it became clear that there would not be sufficient run-off to create a wetland under the old plan, it should be equitably estopped from trying to enforce the penalty provisions based on Krilich's failure to meet the deadlines. Krilich provides all sorts of common sense, seemingly fair reasons why estoppel should apply: the EPA may have contributed to the delay by its slowness in approving alternate plans; the agency wanted a workable wetland, not a dry one; the government should be fair to its citizens.
 
 
 12
 However, what Krilich must contend with is the difficulty, if not the impossibility, of estopping the government. In Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the Supreme Court repeated the long-standing principle that the government may not be estopped on the same terms as other litigants and that it will not be estopped by the mistaken statements of an agent unless it is clear that the representations are within the scope of the agent's authority. Despite declining to set out a broad holding that estoppel will never lie against the government, the Court noted the salient fact that it has reversed every finding of estoppel that it has reviewed. Krilich clearly faces an uphill battle. And it is one which he cannot win. In spite of the failure to meet the deadlines, EPA personnel worked with Krilich to attempt to get the job done. But the EPA also--in writing--made clear its view that the deadlines were unchanged and that the penalties were building. Estoppel is out of the question.
 
 
 13
 Krilich is an apparently successful developer. He negotiated the decree and freely entered into it. It contains methods by which deadlines can be modified, but he did not use those methods. The decree was not modified and the district court has properly enforced it.
 
 
 14
 The government states, however, that the penalties should be adjusted downward to reflect that it only seeks penalties for the period from May 15, 1993, to September 30, 1994, not until October 20, 1994, the date to which the penalties were originally calculated. Judgment should therefore be entered for $1,257,500 and the case is R EMANDED to the district court for the entry of a modified judgment in that amount. No costs are awarded on this appeal. In all other respects, the judgment is
 
 
 15
 AFFIRMED.