**UNITED STATES of America, Plaintiff,**

v.

**WITCO CORPORATION, Defendant.**

**No. Civ.A. 91–022RRM.**

United States District Court, D. Delaware.

Nov. 16, 1999.

States Attorney, Wilmington, DE, Lois J. Schiffer, Assistant Attorney General, Matthew W. Morrison, Trial Attorney, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., for plaintiff.

Phebe S. Young, The Bayard Firm, Wilmington, DE, Kenneth J. Warren, Robert D. Fox, Manko, Gold & Katcher, LLP, Bala Cynwyd, PA, for defendant.

## OPINION

McKELVIE, District Judge.

This is an environmental remediation case. Plaintiff is the United States, on behalf of the U.S. Environmental Protection Agency (EPA). Defendant is Witco Corporation, a Delaware corporation with its principal place of business in New York, New York.

Witco has owned a site in Delaware known as the New Castle Spill Site since 1969. On September 8, 1983, the EPA placed the site on the National Priorities List pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). The EPA named Witco as a potentially responsible party for cleanup costs. As a settlement of the EPA's claim against Witco, the parties entered into a court-approved consent decree on April 19, 1991 whereby Witco agreed to remediate the contaminated site and to reimburse the EPA for the agency's oversight costs. The decree provides that the EPA shall demand reimbursement payments from Witco on an annual basis. The decree also authorizes the EPA to impose penalties on Witco for delays in payment.

On August 12, 1993, the United States Court of Appeals for the Third Circuit decided *United States v. Rohm and Haas Co.*, 2 F.3d 1265 (3d Cir.1993), and ruled that the constitutionally based non-delegation doctrine prohibits the EPA from recovering oversight costs under § 107 of CERCLA when private parties perform the remediation.

Carl Schnee, United States Attorney, Patricia C. Hannigan, Assistant United

On July 31, 1996, the EPA for the first time submitted a demand for oversight costs from Witco. Witco advised the EPA that *Rohm & Haas* precludes the agency from collecting such costs. The EPA responded that the consent decree has contractually bound Witco to pay the costs, *Rohm & Haas* notwithstanding.

On February 12, 1999, Witco filed a motion to preclude the EPA from collecting the oversight costs. Witco alleges that the EPA's tardiness in demanding the costs constitutes a breach of the EPA's obligations under the consent decree, relieving Witco of its duty to reimburse the EPA. Witco also asks the court to modify the consent decree in light of the *Rohm & Haas* decision pursuant to its authority under Rule 60(b) of the Federal Rules of Civil Procedure. In particular, Witco asks the court to delete from the consent decree Witco's obligation to reimburse the EPA for oversight costs.

On August 26, 1999, Witco filed a petition to bar the EPA from collecting penalties that have accrued during the pendency of this dispute. Witco asserts that imposition of such penalties is inconsistent with the provisions of the consent decree and with basic principles of due process.

The parties have completed briefing on the motions. This is the court's decision on Witco's motions.

## I. *FACTUAL BACKGROUND*

The site at issue comprises approximately six acres and is located approximately 0.5 miles west of the Delaware River on New Castle Avenue approximately 0.5 miles north of New Castle, Delaware. Witco, known until 1985 as Witco Chemical Corporation, purchased the site in 1969. Hazardous substances were allegedly released at the site during Witco's ownership of the facility, and investigations have detected contamination in the site's groundwater. One such contaminant is tris (2–chloropropyl)–phosphate.

On September 8, 1983, the EPA listed the site on the National Priority List, also known as the Superfund List. The EPA identified Witco as a potentially responsible party for the release of contaminants at the site. Witco denied responsibility for any release of contaminants. Nonetheless, it agreed to perform a Remedial Investigation/Feasibility Study, which it published on August 1, 1989, to determine the nature and extent of any contamination at the site and to evaluate potential remedial alternatives. The EPA, in concurrence with the State of Delaware, issued a final Record of Decision on September 28, 1989 embodying a plan for remedial action. The EPA's complaint, which was filed on January 14, 1991, sought relief under § 106 and § 107 of CERCLA to compel Witco to remediate the site and to reimburse the EPA for its costs associated with the cleanup.

### A. *The Consent Decree*

Witco agreed to settle the dispute with the EPA. On October 1, 1990, after four months of negotiations, the parties executed a consent decree. Among its provisions, the decree specifies the remediation work to be performed by Witco, and requires that Witco reimburse the EPA for its "Oversight Response Costs" incurred in overseeing the remediation. The costs include all direct and indirect costs "incurred by the United States in overseeing the Work, including, but not limited to, the costs of reviewing or developing plans, reports and other items pursuant to [the] Consent Decree and verifying the proper performance of the Work." Decree at 7. The consent decree provides that the "EPA shall send Witco a demand for payment of such costs on an annual basis, with each demand to be made as soon as practicable after the anniversary date of the entry of this Consent Decree." Decree at 38.

The decree stipulates dispute resolution procedures. In particular, Witco · is obliged to notify the EPA in writing of its objections within ten working days of any

difference of opinion or of receipt of the notice or decision giving rise to a dispute. The EPA, in turn, is to reply to Witco within ten days. In the event that Witco contests the EPA's ruling, the decree provides for a negotiation period, after which Witco may petition the court for redress.

The decree limits the extent to which Witco may challenge the costs demanded by the EPA, allowing Witco to invoke the dispute resolution procedures to contest the costs "solely on the grounds that the costs are not within the definition of Further Response Costs or Oversight Response Costs, that the costs were incurred inconsistently with the NCP [National Contingency Plan] or that the mathematical calculations used to determine costs were performed improperly." Decree at 39.

The decree also stipulates that the EPA may impose penalties upon Witco for any failure to comply with any requirement set forth in the decree, unless excused by force majeure or by written agreement with the EPA. Under the terms of the decree, penalties begin to accrue on the first day of Witco's non-compliance, and continue through the final day of correction of non-compliance. Separate penalties accrue for each separate violation. The decree stipulates that the following penalties shall be imposed for failure to comply with provisions such as the Oversight Response Costs requirements: 1) $2000 per violation per day for the 1st through 14th day; 2) $4,000 per violation per day for the 15th through 30th day; and 3) $12,000 per violation per day for the 31st day and beyond. In the event that Witco challenges its obligations and does not prevail, the decree provides that Witco must pay all penalties and interest that accrued prior to, during and after the dispute resolution period.

The decree provides that the court's authority to supervise or modify the decree is not limited by the terms of the consent decree.

The EPA filed its complaint on January 14, 1991. On January 15, 1991, the EPA lodged the consent decree with this court. The agency also published a Notice of Lodging in the Federal Register on February 11, 1991. Following a thirty-day public comment period during which no comments were received on the proposed settlement, the court entered the consent decree on April 1, 1991.

Witco performed its cleanup obligations satisfactorily, and the EPA removed the site from the Superfund List on June 12, 1996.

### B. The EPA's Costs

To oversee the remediation, the EPA incurred oversight costs which total $204,288.67 for the period from March 20, 1990 through December 31, 1998. The agency, however, failed to submit reimbursement demands to Witco in each year from 1991 to 1995. The EPA attributes this tardiness to a lack of resources. Witco states that $122,593.86 of the total costs due are attributed to the period through from 1990 through 1994 during which the EPA was delinquent in demanding payment.

On August 12, 1993, the United States Court of Appeals for the Third Circuit decided *Rohm & Haas*, 2 F.3d at 1265, and ruled that the constitutionally based non-delegation doctrine prohibits the EPA from recovering oversight costs in conjunction with private cleanups. The Third Circuit explained that CERCLA provides essentially two separate mechanisms for cleaning up waste sites: a government conducted cleanup under § 104 of CERCLA followed by a cost recovery action under § 107, and a private party cleanup, ordered by the EPA, pursuant to § 106. *Rohm & Haas*, 2 F.3d at 1270. Following a government cleanup, the recovery of expenses from responsible parties under § 107 is termed a "removal action." While the statute expressly authorizes the EPA to bring a § 107 removal action in conjunction with a government cleanup conducted under § 104, the statute does not express-

ly allow the agency to bring a § 107 removal action following a private cleanup under § 106. The Third Circuit held that the government had no statutory authority under § 107 to bring a removal action to recoup costs in a private cleanup, and that the EPA had violated the non-delegation doctrine by recovering funds in a manner not authorized by Congress. *Id.* at 1278; *see also United States v. Chemical Leaman Tank Lines, Inc.*, 1994 U.S.Dist. LEXIS 11489, *9 (D.N.J. Mar. 30, 1994).

The EPA did not attempt to recover oversight costs from Witco until July 31, 1996. The agency sought $29,832.14 for costs allegedly incurred by the EPA between March 20, 1990 and April 19, 1991, and $140,751.88 for costs allegedly incurred between April 20, 1991 and December 31, 1995. On September 24, 1996, Witco wrote to the EPA stating that the *Rohm & Haas* decision precluded the EPA from collecting these costs. The EPA responded to Witco on February 24, 1997 contending that Witco remained liable under the terms of the consent decree for payment of the oversight costs, the *Rohm & Haas* decision notwithstanding.

The EPA has continued to submit payment demands to Witco. On April 21, 1997, the EPA demanded $24,739.21 for oversight costs for the year 1996. On April 27, 1998, the EPA sought $7,107.86 for the year 1997. And on February 4, 1999, the EPA demanded $1,857.58 for the year 1998. The total amount demanded for the years 1990 to 1998 is $204,288.67. The EPA insists that it is entitled to collect interest on the outstanding costs that have accrued since March 20, 1990, at the statutory rate set forth in 28 U.S.C. § 1961.

On October 1, 1999, Witco placed the disputed oversight costs in escrow.

### C. The Motion to Preclude Collection of Oversight Costs and to Modify the Consent Decree

After repeated negotiations, the parties failed to reach a settlement. On February 12, 1999, Witco filed a motion with two primary claims. First, Witco seeks to preclude the United States from collecting the $122,593.86 of oversight costs that were demanded late. Witco asserts that the EPA's failure to submit timely reimbursement demands covering the costs incurred through 1994 constitutes a material breach of the EPA's duties under the consent decree, relieving Witco of its duty to pay these costs. Second, Witco asks the court to modify the consent decree pursuant to Federal Rule 60(b) on the grounds that *Rohm & Haas* has rendered the Oversight Response Provisions of the consent decree unconstitutional. In particular, Witco seeks to have the court delete Sections XVI.B, C and D from the consent decree to eliminate Witco's obligation to reimburse the EPA for any of its Oversight Response Costs.

In its answering brief, the EPA argues that the agency's tardiness in demanding reimbursement payments in no way prejudiced Witco, and so cannot constitute a material breach of its duties under the consent decree. Moreover, the EPA asserts that the consent decree constitutes a contractual agreement that has fixed the legal rights and duties of Witco, and that the *Rohm & Haas* decision does not retroactively impair the consent decree. The EPA also argues that the dispute resolution procedures of the consent decree preclude Witco from bringing its present claim.

### D. Penalties

On June 29, 1999, the EPA sent Witco a letter demanding the payment of penalties. The letter explained that since the date of April 12, 1999 (the date of filing of the United States' response to Witco's motion to preclude collection of oversight costs), penalties had accrued to an amount of $584,000, and were continuing to accrue at the rate of $12,000 per day. According to the letter, the EPA had waived approximately $10 million in penalties that had

accrued prior to April 12, 1999. Witco repeatedly wrote the EPA contesting the imposition of penalties, and the EPA insisted that the penalties were justified. On August 26, 1999, Witco filed a petition disputing the United States' assessment of the stipulated penalties. By this date, the penalties accruing from April 12, 1999 totaled approximately $1.2 million. On August 31, 1999, the court held oral arguments on the motion to preclude collection of the Oversight Response Costs. During this proceeding the court reviewed with the EPA issues relating to the propriety of the imposition of penalties at a rate of $12,000/day for time in which the court had been deliberating on Witco's motions. On September 9, 1999, counsel for the EPA wrote the court indicating that the agency would toll the accrual of penalties as of August 26, 1999, but that the agency would continue to insist upon the collection of roughly $1.2 million in penalties that had accrued until that date.

## II. *DISCUSSION*

### A. *Validity of the Consent Decree*

Neither party disputes that the consent decree was valid when entered by the court. The parties similarly agree that the EPA bore the burden under the decree to submit annual demands to Witco for reimbursement of oversight costs. Witco does not contest that the sum of $204,288.67 demanded by the EPA is properly categorized as Oversight Response Costs that must be paid to the EPA if the consent decree remains binding.

### B. *The EPA's Alleged Breach of the Consent Decree*

 Witco alleges that the EPA breached its duty under the consent decree to submit reimbursement demands to Witco on an annual basis. Witco asks the court to absolve Witco of its obligation to reimburse the EPA for its oversight costs incurred through 1994. These costs total $122,593.86.

 A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation. The decree is to be construed as a contract for the purposes of enforcement of its terms. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 235–37, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *Halderman v. Pennhurst State School & Hospital,* 901 F.2d 311, 318 (3d Cir.1990). It is hornbook law that only a material breach of contractual obligations will entitle the non-breaching party to relief. *See Philadelphia & Reading Corp. v. United States,* 944 F.2d 1063, 1079 (3d Cir.1991).

Witco maintains that the EPA's failure to make timely reimbursement demands constitutes a material breach of the EPA's duties under the consent decree. The consent decree provides that the "EPA shall send Witco a demand for payment of such costs on an annual basis, with each demand to be made as soon as practicable after the anniversary date of the entry of this Consent Decree." Decree at 38. Witco contends that the EPA's five-year delay in submitting these payment demands harmed Witco by depriving it of any real and meaningful opportunity to challenge the accuracy of the costs. Witco, however, has not shown that the costs, which have been assessed in a timely fashion since 1996, are inaccurate. Witco, moreover, benefited from EPA's tardiness by retaining the money over the five-year period. The EPA states that it did not begin to charge interest on the agency's costs until after Witco refused to pay the costs. If the delay harmed Witco at all, it cannot be said to amount to a material breach of the contract that would relieve Witco of its obligations under the decree.

### C. *Modification of the Consent Decree Under Rule 60(b)*

Witco has asked the court to modify the consent decree in light of the *Rohm & Haas* decision pursuant to its authority under Rule 60(b) of the Federal Rules of Civil Procedure. Witco asserts that the

decree must be modified because the decision has rendered the Oversight Response Costs provisions of the consent decree unconstitutional. Witco asks the court to delete Sections XVI.B, C and D from the decree in order to eliminate its obligation to pay any of the EPA's oversight costs.

### 1. *Witco's limitations under the consent decree*

#### a. *The ten-day objection period*

■ Witco faces two procedural bars to petitioning the court for redress. First, by the terms of the consent decree, Witco is required to notify the EPA in writing "of its objection(s) within ten (10) working days of any difference of opinion or of receipt of the notice or decision giving rise to a dispute." Decree at 47. The provisions require the EPA to reply to Witco within ten days. If Witco objects to the EPA's decision, it may then file a petition with this court setting forth the dispute and the relief requested.

The EPA demanded the payment in a letter dated July 31, 1996. Witco responded to the EPA's demand on September 24, 1996, after the ten-day period had lapsed. The terms of the consent decree, narrowly construed, preclude Witco's claim in part. Specifically, the terms of the decree bar Witco from petitioning this court to release its obligation to repay the costs incurred by the EPA during the time period from March 20, 1990 to December 31, 1995. Since Witco communicated its objection to the EPA on September 26, 1996, Witco's objections are timely with respect to the EPA's payment demands submitted on April 21, 1997; April 27, 1998; and February 4, 1999.

Witco advances two arguments to preserve its claim. First, Witco argues that it remains free to bring its claim because its motion does not arise under the decree, but rather is an attempt to modify the decree itself. The dispute resolution procedures, however, govern the manner in which Witco may seek modification of the

decree. The procedures permit Witco to bring precisely the action that is now before the court, but on a more accelerated schedule than that to which Witco adhered. Witco argues that the terms of the decree reserve the right of the court to supervise or modify the decree. This provision, however, concerns the power of the court, not the power of Witco. Witco failed to abide by the decree's dispute resolution procedures, and so is barred under the terms of the consent decree.

The court is more sympathetic to Witco's second argument. Although Witco delayed more than a month in submitting its objection to the EPA, Witco points out that the EPA was over five years late in submitting its reimbursement demands. While EPA's tardiness cannot fully excuse Witco's delay, we note that the EPA has not alleged that it was prejudiced by Witco's failure to adhere to the ten-day objection period. We do not construe Witco's misconduct as a material breach of its duties that precludes it in this case from bringing its claim. Because we find this breach to be immaterial, we will consider Witco's motion to release its pre–1996 obligations on the merits. In any event, Witco's motion to release its obligations for the costs incurred by the EPA in 1996, 1997, and 1998 is not barred from consideration.

#### b. *Permissible substantive grounds for objection*

■ The EPA argues that Witco faces a second bar to bringing its present motion. It notes that the decree provides that Witco shall not contest the EPA's demands for reimbursement of costs except under one of the following three bases: (1) that the costs are not within the definition of Further Response Costs or Oversight Response Costs, (2) that the costs were incurred inconsistently with the NCP [National Contingency Plan], or (3) that the mathematical calculations used to determine costs were performed improperly. Decree at 39. These grounds do not in-

clude objections based on changes in law, such as the *Rohm & Haas* decision, that undermine the authority of the EPA to collect the oversight costs. The EPA thus argues that Witco is precluded from bringing its present motion because Witco's claim does not fall within one of the three enumerated grounds for objection.

Courts have the authority to determine whether a contract or consent decree is unenforceable on grounds of public policy. Restatement (Second) of Contracts § 178. Courts may render a contract unenforceable when the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms. *Id.* The terms of the consent decree enumerate three situations, all concerning the details of categorizing and calculating costs, in which Witco may contest the decree in court. Above and beyond these three situations, the court retains the authority to review the contract for unenforceability on the grounds of public policy. Because Witco has alleged that enforcement of the decree would abridge its constitutional rights, the court has the authority to review the decree, even absent express authority from the terms of the decree.

2. *The merits of Witco's motion under Rule 60(b)*

 Witco asks the court to modify the consent decree under Federal Rule 60(b).[1] Rule 60(b) authorizes courts to relieve parties from a final judgment, order, or proceeding. Rule 60(b)(5) permits such relief in cases where "it is no longer equitable that the judgment should have

prospective application." Rule 60(b)(6) is a catch-all provision that allows relief for "any other reason justifying relief from the operation of the judgment." The determination to grant or deny relief under Rule 60(b) is within the sound discretion of the court. *Lasky v. Continental Products Corp.*, 804 F.2d 250, 256 (3d Cir.1986).

Two Supreme Court opinions provide a foundation for the legal standard governing this dispute. In *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932), the Supreme Court held that a court should refrain from modifying a consent decree unless there is a "clear showing of grievous wrong evoked by new and unforeseen conditions." The Supreme Court, in 1992, announced a more flexible standard that expressly overruled *Swift* in the context of institutional reform. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). The *Rufo* Court held that the party seeking modification of a consent decree "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.* at 383, 112 S.Ct. 748. The *Rufo* Court held that a change in law could constitute a change in circumstances that would support modification of a consent decree if the parties had based their agreement on a misunderstanding of the governing law. *Id.* at 390, 112 S.Ct. 748.

Noting that the Supreme Court expressly limited *Rufo* to the context of institutional reform cases, the Third Circuit established a general standard for Rule 60(b) cases in *Building and Construction Trades Council (BCTC) v. National Labor*

---

1. Fed.R.Civ.P. 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment". The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

*Relations Board,* 64 F.3d 880 (3d Cir. 1995). In *BCTC,* the court stated that the primary consideration in a Rule 60(b) motion is "whether the modification is sought because changed conditions unforeseen by the parties have made compliance substantially more onerous or have made the decree unworkable." *BCTC,* 64 F.3d at 888. This generalized standard of *BCTC* is at least a strict as the *Rufo* rule that the parties must have based their agreement on a misunderstanding of the governing law in order to warrant a modification under Rule 60(b). *See also Dowell v. State Farm Fire and Casualty Automobile Insurance Co.,* 993 F.2d 46, 48 (4th Cir.1993) (affirming district court ruling that a decisional change in the law subsequent to a final judgment does not provide a sufficient basis for vacating the judgment under Rule 60(b)(5)); *United States v. Woods,* 986 F.2d 669, 674–75 (3d Cir.1993) ("[I]n civil adjudication, the general rule under Fed.R.Civ.P. 60(b) is that a judgment will not be disturbed despite a change in the law."); *United States Steel Corp. v. Fraternal Association of Steel Haulers,* 601 F.2d 1269, 1274 (3d Cir.1979) ("[W]hen, as in this case, the appellants made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost.").

Witco argues that the *Rohm & Haas* decision constitutes a change of law that warrants a modification of its consent decree. Witco, however, misconstrues the application of *Rohm & Haas* to the present dispute. *Rohm & Haas* prohibits the EPA from collecting oversight costs in an action under § 107 of CERCLA when a private party has performed the cleanup operations under § 106. *Rohm & Haas,* however, says nothing about what nature of consideration the EPA may demand in a consent decree for the settlement of a dispute. *See United States v. Chemical Leaman Tank Lines, Inc.,* 1994 U.S.Dist. LEXIS 11489, *12 (D.N.J. Mar. 30, 1994).

In this case, Witco agreed as a term of its settlement to reimburse the oversight costs incurred by the EPA. The terms of the consent decree were negotiated by the two parties at arms' length. Once this court entered the consent decree on April 1, 1991, the EPA's authority to recover its oversight costs derived from the terms of the consent decree, not from § 107 of CERCLA. *Rohm & Haas,* thus, does not impair the EPA's right to collect its oversight costs from Witco. *See also United States v. Atlas Minerals and Chemicals, Inc.,* 851 F.Supp. 639, 650 (E.D.Pa.1994) ("Insofar as the Court of Appeals limits its holding to whether oversight costs are recoverable as a cost of "removal," *Rohm and Haas* is at least facially distinguishable from the case at bar.").

Even under Witco's interpretation of *Rohm & Haas,* the change of law is insufficient to warrant a modification under Rule 60(b). *Rufo* requires that the parties must have based their agreement on a misunderstanding of the governing law. *Rufo,* 502 U.S. at 390, 112 S.Ct. 748. Witco alleges that, at the time the parties executed the consent decree, both Witco and the EPA believed that CERCLA authorized the EPA to recover Oversight Response Costs. That the parties believed the EPA had such authority, however, does not mean that the parties based their agreement on this misunderstanding of the law. The parties were free to determine the terms of the decree, and Witco's agreement to pay the oversight costs incurred by the EPA is simply consideration in exchange for the EPA's covenant not to sue.

Witco maintains that the EPA cannot insist on terms that have been declared unconstitutional. Witco rests on the statement in *Rufo* that "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law." *Rufo,* 502 U.S. at 388, 112 S.Ct. 748. But Witco fails

to acknowledge that *Rohm & Haas* does not prohibit the EPA from collecting oversight costs as a term of a settlement agreement. *Rohm & Haas* simply bars the EPA from exacting the costs as a matter of law in an action under § 107 of CERCLA.

### D. *Enforcement of the Penalty Provision*

■ Witco has moved to preclude the EPA from assessing or recovering the stipulated penalties recited in the consent decree. Section XX.G of the consent decree provides that Witco shall pay stipulated penalties for any failure to comply with any requirement set forth in the decree, including the payment of Oversight Response Costs.[2] In the event that Witco invokes the decree's dispute resolution procedures, the decree states that penalties and interest thereon shall accrue but need not be paid during the dispute resolution period. According to the decree, if a disputed matter is submitted to the court, the dispute resolution period shall end upon the rendering of a decision by the district court, or upon resolution of the issue by the Third Circuit if either party appeals such decision. If Witco does not prevail in the dispute, the decree provides that Witco must pay all penalties and interest thereon which accrued prior to, during, and after the dispute resolution period.

The underlying dispute in this case, as discussed above, relates to the payment of $204,288.67 in Oversight Response Costs. Based upon a good faith claim that these

costs were improperly demanded, Witco filed a motion on February 12, 1999 to preclude their collection. The EPA filed its answering brief on April 12, 1999, and Witco filed its reply brief on April 29, 1999, thus completing the briefing on the motion. The court held oral arguments on the underlying dispute on August 31, 1999, and prepared its opinion shortly thereafter. From approximately the time when the parties had completed their briefing until the court had prepared its opinion on the underlying matter, the penalties accrued to approximately $1.2 million, nearly six times the amount of the underlying disputed costs. Every day when this court turned its attention to other matters pending before it, Witco became liable for an additional $12,000 in penalties.

The court recognizes that neither the EPA nor the environment are being harmed by Witco's delay in paying the Oversight Response Costs. On October 1, 1999, Witco placed the disputed costs in escrow, payable to the EPA upon this court's ruling that Witco is liable for the costs. The EPA, thus, is assured to collect its costs upon the issuance of this Opinion and entry of the accompanying Order. The environment, similarly, is unaffected by the duration of Witco's challenge to the Oversight Response Costs provisions. Witco satisfactorily discharged its duty to remediate the spill site in 1996.

Under the terms of the consent decree, Witco is penalized for asserting its rights in court. The amount of the penalty is beyond the control of Witco, as the penalties accrue by $12,000 for every day that

---

2. Section XX.G of the consent decree, in full, provides:

G. Witco may dispute the United States's right to assess penalties (including, but not limited to, the issue of whether or when non-compliance has occurred) by invoking the dispute resolution procedures under Section XIX herein. Witco shall not dispute the daily amount of penalties accruing. Penalties and interest thereon shall accrue but need not be paid during the dispute resolution period. If a disputed matter is submitted to the Court, the dispute resolution period shall end upon

the rendering of a decision by the District Court (or upon resolution of the issue by the Third Circuit Court of Appeals if either party appeals such decision). If Witco does not prevail upon resolution, Witco must within thirty (30) days pay all penalties and interest which accrued prior to, during and after the dispute resolution period. To the extent Witco prevails upon resolution, it shall be relieved of liability for the penalties in dispute and no further penalties shall accrue for the violations in question.

this court is occupied with other matters. Witco has expressly retained the right under the decree to invoke the powers of the court to clarify its obligations. This right, however, rings hollow when Witco is penalized at such a rate for invoking the dispute resolution procedures. Alleged polluters, such as Witco, effectively surrender their rights to invoke the judicial process when the stipulated penalties are imposed. Considering that the consent decree is designed to bind the parties for an extended period of time to effectuate a complex environmental remediation project, access to the courts for all parties is critical to resolve the disputes that will inevitably arise therefrom.

 To determine whether stipulated penalty provisions of the consent decree are enforceable, the court looks to the federal common law. A consent decree is a court order subject to the rules generally applicable to other judgments and decrees. *Rufo*, 502 U.S. at 378, 112 S.Ct. 748. The court's authority to supervise and modify the decree derives from its powers under Rule 60(b) of the Federal Rules of Civil Procedure.[3] The grounds and procedures for setting aside a federal judgment are entirely a matter of federal law. *See Wiedemann v. Galiano*, 722 F.2d 335, 337 n. 2 (7th Cir.1983); 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2853.

This court is not the first to consider whether the federal common law condones the enforcement of stipulated penalties in EPA consent decrees. In *United States v. Krilich*, 948 F.Supp. 719 (N.D.Ill.1996), the court considered whether to enforce a stipulated penalty provision of a consent decree entered into by alleged polluters for violations of the Clean Water Act. The defendants therein failed to adhere to deadlines for the cleanup of the site. The EPA sought to impose the penalties authorized by the consent decree—$2500 per

day for 523 days, for a total of $1,307,500. The penalty rate stipulated to in the consent decree was substantially lower than the maximum rate—$25,000 per day—authorized by the Clean Water Act. 33 U.S.C. § 1319(d).

The *Krilich* court found that no authority had yet imposed a reasonableness requirement on stipulated penalties contained in consent decrees. *Krilich*, 948 F.Supp. at 726. The court noted that the common law has traditionally provided that contractual provisions are unenforceable penalties when the stipulated amount exceeds a reasonable upper estimate of potential damages, as contemplated at the time of contracting. *Id.* at 727. The court recognized, however, that the penalty provisions at issue in the EPA consent decree are legally distinct from liquidated damages provisions in private contracts. *Id.* at 726. The court thus stated that common law jurisprudence on penalty provisions does not provide a guide for determining whether the penalty provisions of the decree are enforceable. *Id.* The court contemplated that the reasonableness requirement of the common law might be incorporated into federal law, but found that the facts of the case before it did not require the court to make such a determination. Noting that the penalties sought by the EPA under the consent decree were just 10% of the maximum penalties authorized by statute, the court found that the stipulated penalties were reasonable. *Id.* Thus, the court concluded, establishing a reasonableness requirement in federal law for stipulated penalty provisions would not affect the outcome of the case.

The facts in the present case dictate that this court recognize the rule contemplated in *Krilich*. The penalties sought by the EPA bear no relation to the degree of harm caused by Witco in contesting its liability to pay Oversight Response Costs. As noted above, neither the EPA nor the

---

**3.** Rule 60(b) provides in pertinent part that "the court may relieve a party or a party's representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void."

environment are being harmed by Witco's pursuit of its legal claims. The penalties, far from reflecting the harm caused to other parties, accrue in proportion to the number of days this court turns to other matters pending before it. The $1.2 million sought by the EPA as a penalty does not bear on the culpability of Witco in delaying its payment obligations, but rather measures the time taken by this court in rendering its opinion. The penalty provisions of Section XX.G of the consent decree, which provide that penalties shall accrue during dispute resolution periods, do not establish a reasonable measure of harm caused by noncompliance with the decree. The court rules that Section XX.G of the consent decree is void and unenforceable.

For the reasons stated above, the court will grant Witco's motion to preclude the United States from assessing and recovering the stipulated penalties. The court will issue an Order consistent with this Opinion.