In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1380

United States of America,

Plaintiff-Appellee,

v.

Shakeab Alshabkhoun and A&A Farms,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98-C-583-S--John C. Shabaz, Judge.

Argued October 31, 2001--Decided January 18, 2002


   Before Bauer, Coffey and Diane P. Wood,
Circuit Judges.

   Bauer, Circuit Judge.  The United States
and appellants Shakeab Alshabkhoun and
A&A Farms (collectively A&A) entered into
a court-approved Consent Decree to
resolve the government's claims that A&A
violated the Clean Water Act. When A&A
failed to comply with the terms of the
Consent Decree, the government moved to
enforce the stipulated penalties
provision. The district court granted the
government's motion and ordered A&A to
pay stipulated penalties and attorney's
fees. A&A appealed that ruling. For the
reasons set forth below, we affirm the
district court.

I.  Background

   A&A owns 1,000 acres of farmland
adjacent to the Wisconsin River in Dane
County, Wisconsin. In January of 1994,
A&A excavated a drainage ditch system to
collect water and excess soil from the
farm and neighboring land and convey it
to the river. The system required a ditch
that was 38 feet wide and 1,500 feet
long, which resulted in the discharge of
dredged or fill materials into the
wetlands. A&A did not obtain a permit
from the United States to construct this
drainage ditch system.

   On December 4, 1996, the Environmental

Protection Agency (EPA) issued an administrative compliance order stating that A&A's construction of the ditch without a permit was a violation of the Clean Water Act. The Clean Water Act prohibits the discharge of any pollutant, including dredged or fill material, into navigable waters of the United States, except in accordance with a permit. 33 U.S.C. sec. 1311(a). A&A then submitted a restoration plan that the EPA rejected and further attempts to resolve the dispute failed.

On August 13, 1998, the United States filed a civil action in federal district court under section 309 of the Clean Water Act. The court entered partial summary judgment in favor of the government and, on July 2, 1999, the parties entered into a Consent Decree for the restoration of the wetlands. The decree was negotiated by both parties and approved by the district court. It required A&A to pay $225,000 in civil penalties. Further, to properly restore the wetlands, the Consent Decree required A&A to submit to the EPA a Restoration Work Plan, prepared by a certified engineer, and a schedule for completing the tasks set forth in the Plan.

The Consent Decree provided for stipulated penalties for any failure to implement the Plan in compliance with the schedule. Specifically, the Consent Decree required the payment of $500 per day for one to thirty days of noncompliance, $1,000 per day for thirty-one to sixty days of noncompliance and $2,000 per day for sixty-one or more days of noncompliance. The Consent Decree allowed for the extension of the deadlines if "performance is prevented or delayed solely by events which constitute a Force Majeure event," defined to exclude "normal precipitation or climate events." A&A was required to notify the government in writing of any alleged Force Majeure event to invoke the extension of deadlines.

The Consent Decree also included a dispute resolution provision. Under this provision, if A&A filed a petition in court concerning the Consent Decree, A&A's penalties would continue to accrue during the proceedings; however, the filing of a petition would stay A&A's obligation to pay any penalty regarding

the disputed matter. In the event that A&A did not prevail on the matter in dispute, the stipulated penalties became due.

The Plan required A&A to obtain bids from contractors within thirty days of the approval of the Plan, complete grading and installation of erosion control measures within forty-five days thereafter, and plant the required trees, shrubs and seeds within thirty days after that. A&A hired a contractor and began the work in late November of 1999, but did not complete the project. More than two months later, on February 17, 2000, A&A filed a notice of dispute with the EPA, requesting relief from the Plan on the grounds that compliance was impossible. A&A stated that it had hired additional experts who opined that the implementation of the Plan could potentially cause flooding problems. The EPA reviewed this information and denied A&A relief.

On April 7, 2000, invoking the decree's dispute resolution clause, A&A filed a Petition to Modify the Consent Decree with the district court claiming that significant unforeseen circumstances affected its ability to perform the work. The court rejected A&A's impossibility claim and instead found that since the drainage problem was the very reason A&A constructed the ditch at issue, A&A was well aware of its experts' observations and the potential for drainage problems at the time the Consent Decree was negotiated. As a result, on May 26, 2000, the district court held that A&A had failed to present adequate grounds for any modification of the decree and the petition was denied.

In June of 2000, spring flooding rendered the land unsuitable for work. A&A did complete the required excavation in October of 2000, but the parties were still in dispute over the issue of stipulated penalties for the delay. On October 23, 2000, the government filed a Petition to Enforce the Consent Decree, asking the court for an award of $507,850.40. The amount represented the accumulation of the stipulated daily penalties, as well as attorney's fees. In response, A&A did not contest the calculation of damages, but argued that the stipulated penalties provision was

unreasonable and unenforceable and that the delay in completing the work should be excused due to the June flooding.

On January 11, 2001, the district court granted the government's petition in full. The court held that the stipulated penalty provision was reasonable and enforceable because it amounted to less than 10% of the penalty authorized by statute. Further, the court refused to excuse the delay due to the June flooding because had A&A implemented the Plan in a timely manner seven months earlier, the June flooding would have been irrelevant. A&A then brought this appeal.

II.  Discussion

Because a consent decree is a form of contract, we generally review a district court's interpretation of the consent decree de novo. Goluba v. Sch. Dist. of Ripon, 45 F.3d 1035, 1037-38 (7th Cir. 1995). However, where, as here, the district court oversaw and approved the consent decree, we give "some deference" to the district court's interpretation. Id.

A&A concedes that the construction of the ditch violated the Clean Water Act. The sole issue raised on this appeal is whether the district court's enforcement of the Consent Decree is against public policy. A&A presents two arguments: (1) that the stipulated penalty provision in the Consent Decree is void and unenforceable as a matter of public policy because it allows for penalties to accrue while the parties engage in the dispute resolution process; and (2) that the district court erred in penalizing A&A for the delay in compliance with the schedule because it was unable to perform the work due to the June flooding. We find both arguments to be without merit.

A consent decree is a court order that embodies the terms agreed upon by the parties as a compromise to litigation. United States v. Witco Corp., 76 F. Supp. 2d 519, 525 (D. Del. 1999). For purposes of construction, a judicially approved consent decree is essentially a contract. United States v. City of Northlake, Illinois, 942 F.2d 1164, 1167 (7th Cir. 1991). While a consent decree is also deemed a judgment of the court, "it is the parties' agreement that serves as the

source of the court's authority to enter any judgment at all." Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 522 (1986); King v. Walters, 190 F.3d 784 (7th Cir. 1999).

A provision within a consent decree fixing a stipulated penalty is unenforceable if it constitutes an unreasonable penalty or is void as a matter of public policy. South Suburban Hous. Ctr. v. Berry, 186 F.3d 851, 856 (7th Cir. 1999). A&A argues that the stipulated penalty provision in the Consent Decree forces A&A to effectively surrender its rights to invoke the dispute resolution process because stipulated penalties might be imposed while the dispute is pending. In support of its public policy argument, A&A relies heavily on United States v. Witco Corporation, in which a United States District Court rendered a similar stipulated penalty provision void and unenforceable.

In Witco, the EPA asserted a claim against Witco Corporation, a property owner, seeking the clean-up of a contami nated land site. Witco Corp., 76 F. Supp. 2d at 521. Witco and the EPA entered into a consent decree that provided for stipulated penalties if Witco failed to comply with the decree's terms and the accrual of penalties during any period of dispute resolution. Id. at 522-23. Witco invoked the dispute resolution clause but did not succeed in the dispute. The EPA sought collection of the stipulated penalties, including those that had accrued during the dispute. Id. at 524. The district court refused to award such penalties. Id. at 531. Reasoning that enforcement of the stipulated penalties provision would penalize Witco for asserting its rights to judicial process, the court determined that the stipulated penalty provision was against public policy and therefore, unenforceable because it allowed penalties to accrue while the dispute was pending. Id. at 529-30.

A&A's reliance on Witco is misplaced. The decisions of the district court of Delaware are not controlling authority in this jurisdiction and Witco is notably distinguishable from A&A's case. First, Witco completed the required clean-up before invoking the dispute resolution

clause. Id. at 523. The penalties at issue in that case accrued only while the dispute over fee amounts was pending, and Witco's dispute involved a change in the law since the entry of the consent decree. Unlike the instant case, Witco had fully remedied the environmental harm by completing its work, and the accrued penalties at issue were unrelated to any continuing environmental violation. Id. at 530-31.

In contrast, A&A invoked the dispute resolution procedures while the required work was still uncompleted. A&A's penalties accrued during this period not because of a late payment, but because of the unwarranted delay in completing the restoration of the wetlands, as required by the Consent Decree. In addition, while Witco brought a good faith claim based on a change in the law, A&A sought to modify the decree here without any similar, legitimate basis. We agree with the district court that Witco was not instructive in this case.

More analogous is United States v. Krilich, 126 F.3d 1035 (7th Cir. 1997), in which we upheld the imposition of over $1 million in stipulated penalties. Krilich, a property owner, entered into a consent decree to settle the government's Clean Water Act claims. Krilich, 126 F.3d at 1036. In the decree, Krilich promised to restore the subject wetlands according to a schedule. Krilich missed the scheduled deadlines and the government moved to enforce the decree's stipulated penalties provision. Id. The district court granted the motion and we affirmed. In so doing, we noted that Krilich had negotiated the decree, entered into it freely, and never properly modified any of the deadlines. Id. at 1037. Accordingly, Krilich was bound to pay the stipulated penalties set forth in the consent decree. We believe that the result in Krilich is warranted in the instant case.

We agree with A&A that access to the courts is of paramount importance. However, it does not follow that an agreed upon provision that allows for the accrual of stipulated penalties during any dispute resolution is unenforceable as a matter of public policy. It is undisputed that this Consent Decree was drafted and negotiated by both parties

and entered into voluntarily. A&A cannot now escape the consequences of the Consent Decree with a public policy argument that the provision inhibits its right to access the courts. A&A's blanket statement that the "right to dispute resolution 'rings hollow' when accompanied by the risk of penalties" is overbroad. In fact, the stipulated penalty accrual provision does not apply to a successful claim. Unfortunately for A&A, it was not successful on its petition to modify the Consent Decree. As a result, A&A is liable for the penalties that accrued during the resolution of that dispute. To excuse A&A from the stipulated penalties would undermine the clear terms of the Consent Decree andprovide any party to a Consent Decree with a method of delaying performance by invoking the dispute resolution clause with meritless claims.

Although unreasonable penalties may well be unenforceable, we believe the stipulated penalties imposed under this Consent Decree are reasonable under these circumstances. See, e.g., United States v. Krilich, 948 F. Supp. 719, 726 (N.D. Ill. 1996). The penalties are directly related to the environmental harm caused by A&A. Further, the amount is less than 10% of the statutory authorized penalties. See 33 U.S.C. sec. 1319(d).

A&A also argues that the stipulated penalties were unreasonable as a matter of public policy since the delay in work was attributable to weather conditions beyond its control. It argues that it did not resume work following the resolution of the dispute because June flooding rendered the land unsuitable for work. A&A adds that even the government concedes that the land was too wet for the work at the time. The Consent Decree provided that a deadline may be excused in the event of a "Force Majeure." This provision, however, required A&A to notify the government in writing of the alleged Force Majeure event in order to excuse a deadline. Because A&A failed to do so, A&A cannot now claim that compliance with the schedule was not pos sible. See, e.g., Krilich, 126 F.2d at 1037. Moreover, because June was a full seven months after the Consent Decree's deadlines for completing the work, any flooding in June does not warrant an excuse for the delay and is therefore ir

relevant to the issue of stipulated penalties.

III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.