[No. E011375. Fourth Dist., Div. Two. Jan. 12, 1993.]

GENERAL MOTORS CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
JAMES TICICH, Real Party in Interest.

## COUNSEL

Grace, Skocypec, Cosgrove & Schirm, Eugene R. Grace, Philip R. Cosgrove and David K. Schultz for Petitioner.

No appearance for Respondent.

Bawden & Tyler and Richard E. Bawden for Real Party in Interest.

## OPINION

**DABNEY, Acting P. J.**—Petitioner General Motors Corporation (General Motors) sought summary judgment on the ground that the real party in interest, James Ticich (Ticich) had relinquished his right to pursue this action against it when he executed a release of "any and all persons, firms, and corporations." We hold that this general release operates to release General Motors even though it was not specifically named or identified in the release, and that the trial court, therefore, erred in denying summary judgment. Accordingly, we will grant the petition and direct the superior court to grant General Motors' motion for summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of an automobile accident that occurred in September 1987, between a vehicle driven by Charlotte Martinez and a 1984 Buick

Century driven by Yvonne Ticich, the wife of real party Ticich. Yvonne Ticich died several days later as a result of injuries sustained in this collision.

Ticich retained the law firm of Robert D. Andrews to represent him and his children. Andrews's office contacted Buick Motors Corp. in December 1987, to advise it of a possible products liability claim against it as a result of the accident.

On January 5, 1988, in consideration of the amount of $25,000 Ticich executed a release and discharge of Charlotte Martinez and "any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity, of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death and/or property damages resulting or to result from an accident that occurred on or about the 29th day of Sept. 1987, at or near San Bernardino, California."

Both Ticich and Martinez were represented by attorneys at the time this release was negotiated, and Ticich's attorney, Deborah Mohr Walker, also signed the release as a witness. The $25,000 check was made payable to Robert D. Andrews and Ticich, for the estate of Yvonne Ticich.

In February 1988, Ticich retained a new attorney, Richard Bawden, and on June 14, 1988, acting individually and as guardian ad litem for Yvonne Ticich's children, Ticich filed an action for wrongful death and products liability naming as defendants Buick and General Motors among others.

General Motors moved for summary judgment and/or adjudication based on the release executed by Ticich, contending that the terms of the release clearly served to release it as well as any other person or corporation.

Ticich opposed the motion, contending that this provision of the release agreement as interpreted by General Motors is unconscionable and against public policy. He also argued that General Motors lacked standing to enforce the release agreement because it was not an intended beneficiary of the contract. The only evidence submitted by Ticich in opposition to the motion was the declaration of Attorney Bawden, who stated that he devotes the majority of his practice to personal injury litigation and that he had seen "many form release agreements of the type that was used by Charlotte

Martinez/Nationwide in the settlement with James Ticich . . . . In [his] experience, these forms are routinely exchanged without any thought of their operation as third party beneficiary contracts. Rather, they are used to settle all claims of whatever type between the parties, including their business organizations, heirs, successors and assigns."

The trial court denied summary judgment relying on the "reasoning of the Illinois case of *Alsup* v. *Firestone Tire & Rubber Co.* 461 N.E.2d 361 (Ill. 1984) [which] requires a general form release to specifically identify every individual or entity which is to be released. In doing so, the court specifically refused to follow *Winet* v. *Price* 4 Cal.App.4th 1159 (1992); *Edwards* v. *Comstock Ins. Co.* 205 Cal.App.3d 1164 (1988); *Eustace* v. *Dechter* 53 Cal.App.2d 726 (1942); and the majority of out-of- state cases which have upheld the plain language of a general form release of 'all other persons, firms or corporations' to release all other persons or entities, such as General Motors, regardless of whether they are specifically named in the release or not."

## DISCUSSION

Pursuant to Code of Civil Procedure section 877, subdivision (a), a release given to one tortfeasor shall not discharge any other party from liability unless its *terms so provide*. The release contract executed by Ticich provides for the release and discharge of Charlotte Martinez, the other signatory to the agreement, and "any and all person, firms and corporations, whether herein named or referred to or not."      We conclude that the trial court erred in denying General Motors' motion for summary judgment because Ticich did not present evidence raising a triable issue of fact that the language of this release did not encompass all persons or entities, including General Motors, or that its application in this case to bar this action is unconscionable or against public policy.

     We begin our analysis with the axiom that the interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement. (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554]; *Edwards* v. *Comstock Insurance Co.* (1988) 205 Cal.App.3d 1164, 1167-1169 [252 Cal.Rptr. 807].)      We, thus, reject the trial court's conclusion that Code of Civil Procedure section 877, subdivision (a) requires a release agreement to specifically identify the tortfeasors to be released. In reaching this conclusion, it relied on the majority decision in the Illinois case of *Alsup* v. *Firestone Tire & Rubber Co.* (1984) 101 Ill.2d 196 [461 N.E.2d 361]. However, we find that the rationale presented by the majority opinion in *Alsup* to be unsatisfactory for the following reasons.

Under the common law, the discharge of one joint tortfeasor automatically released all other tortfeasors. This rule was criticized as being harsh and without any rational basis (*Alsup* v. *Firestone Tire & Rubber Co.*, *supra*, 461 N.E.2d at pp. 363-364), and dissatisfaction with this rule led to the adoption in various states of the Uniform Contribution Among Tortfeasors Act which provides that a release "does not discharge any other tortfeasors from liability for the injury or wrongful death unless its terms so provide." (12 West's U. Law Ann. (Master ed. 1975) Uniform Contribution Among Tortfeasors Act § 4, p. 98; see *Wells* v. *Shearson Lehman/American Exp.* (1988) 72 N.Y.2d 11 [530 N.Y.S.2d 517, 526 N.E.2d 8, 12].) Code of Civil Procedure section 877, subdivision (a), contains substantially similar language as does the Illinois statute which was at issue in *Alsup*. The majority opinion in *Alsup* observed that the intent of the legislature in adopting this statute was to abolish the common law rule, and concluded that "the modifying language that follows, *i.e.*, 'unless its terms so provide,' should [not] be interpreted to allow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms. The legislature surely was aware of the criticism that the common law rule often operated to violate the intentions of persons giving releases. We consider that the legislature's intendment was that under [this statute] a release was not to discharge 'other tortfeasors' from liability unless they were designated by name or otherwise specifically identified." (*Alsup* v. *Firestone Tire & Rubber Co.*, *supra*, 461 N.E.2d at p. 364.)

However, the dissenting justice in *Alsup* pointed out that there was "[n]othing in the statute [which] requires that the others released be identified by name or otherwise specifically identified." (*Alsup* v. *Firestone Tire & Rubber Co.*, *supra*, 461 N.E.2d at p. 365 [dis. opn. of Ryan, C. J.].) Similarly, Code of Civil Procedure section 877, subdivision (a), contains no requirement of specific identification. Our Legislature could have easily so provided. (Cf. *Wells* v. *Shearson Lehman/American Exp.*, *supra*, 526 N.E.2d at p. 12.) We are not persuaded that interpreting the language of such a release according to the usual rules of contract interpretation would undermine the legislative intent in enacting this statute and result in the "unintended release of persons who were strangers to the release contract." And we see no reason not to apply these general rules of contract construction in the present case simply because the release is on a preprinted form where the language is otherwise clear and unambiguous: no competent evidence was introduced to raise a triable issue of fact as to ambiguity or to suggest that this term was not freely negotiated.

Turning to the specific release at issue, we note that its language appears clearly and unambiguously to release every person or entity from liability to

Ticich arising from the described automobile accident. ■ One of the basic principles of contract interpretation is that "parol evidence is properly admitted to construe a written instrument when its language is ambiguous. The test of whether parol evidence[1] is admissible to construe an ambiguity is not whether the language appears to the court unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.' (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)" (*Winet* v. *Price, supra,* 4 Cal.App.4th at p. 1165.) The determination whether to admit parol evidence involves a two-step process. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid the second step—interpreting the contract." (*Ibid.*)

■ Applying the foregoing principles to this case, we observe that the plain language of the release discharges General Motors as well as the rest of the world from liability arising from the specified automobile accident, but in opposing General Motors' summary judgment motion, Ticich presented no competent evidence to suggest that another possible meaning of this language was intended by the parties. There were no declarations or other evidence tendered to show that he and Martinez or their respective attorneys did not intend the release to include General Motors or others at the time they negotiated this settlement.[2] Because there was no evidence of the parties' discussions at the time the release was negotiated, we do not know whether the parties even discussed the issue of the scope of the release. (Cf.

[1]Prior to the 1978 amendment of Code of Civil Procedure section 1856, "the parole evidence rule was held inapplicable in an action between one party to the contract and a stranger, and both were permitted to introduce evidence contradicting the terms of the writing." (2 Witkin, Cal. Evidence (3d ed. 1986) Documentary Evidence, § 1011, p. 954.) Witkin opines that the purpose of the amendment which deleted the introductory phrase limiting the application of the rule to actions "between the parties and their representatives, or successors in interest" was to change this rule and "preclude the introduction of evidence contradicting the terms of a writing even though the action is between a party to the contract and a stranger." (2 Witkin, *supra,* § 1012, p. 955.) The Supreme Court in *Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435, at footnote 3 [204 Cal.Rptr. 435, 682 P.2d 1100], cited Witkin on the issue but did not resolve the issue, which had not been raised on appeal, because it found that the extrinsic evidence was admissible in any event. (*In re Marriage of Horn* (1986) 181 Cal.App.3d 540, 549, fn. 9 [226 Cal.Rptr. 666].) We need not decide the issue either because, conversely, Ticich did not present any competent extrinsic evidence.

[2]Ticich did not even submit a declaration attesting to his own intent at the time he executed this release. Such evidence of his own undisclosed intentions would not have been sufficient to raise a triable issue of fact (*Edwards* v. *Comstock Insurance Co., supra,* 205 Cal.App.3d

*Asare* v. *Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 [2 Cal.Rptr.2d 452] [workers' compensation release form releasing all claims was held inapplicable to a later tit. VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) discrimination claim lawsuit where there was evidence that the attorneys for the parties expressly discussed the issue and agreed that the release would not apply to the tit. VII claim].)

The only declaration that Ticich did submit in opposition to the summary judgment motion, that of Attorney Bawden, was not competent evidence to raise a triable issue of fact regarding the interpretation of the release agreement. Bawden was not involved in the negotiations which resulted in the execution of the release so that he had no personal knowledge regarding the intent of the parties at the time the release was executed. **(4)**(See fn. 3.), **(1d)** His declaration also fails to demonstrate that the contracting parties employed the language of releasing "any and all persons, firms and corporations" according to an established "trade usage."[3] (*Ermolieff* v. *R.K.O. Radio Pictures* (1942) 19 Cal.2d, 543, 550 [122 P.2d 3].)

Thus, having no direct evidence of the parties' intentions at the time the release was negotiated, "there remain only the surrounding circumstances from which to interpret the language of the contract." (*Winet* v. *Price, supra,* 4 Cal.App.4th at pp. 1167-1168.) Based on our review of the surrounding circumstances we can only presume that the parties did intend to release General Motors as well as all other tortfeasors. In this regard, the evidence shows that Ticich's attorneys were aware of a potential claim against General Motors, having sent Buick Motors Corp. a notice in December 1987, advising it of a possible products liability claim against it arising from this accident. Furthermore, Martinez certainly had an incentive to include all other potential tortfeasors within the release. Even if Martinez were confident that she could establish that the settlement with Ticich was made in good faith, she and her attorney(s) may have wanted to avoid being dragged

---

1164, 1169), but we make note of this failure simply to emphasize the paucity of evidence presented by Ticich in opposition to the summary judgment motion.

[3]Under the "trade usage" rule, extrinsic evidence is admissible to show that words in a contract have by "trade usage acquired a different meaning [than their plain, ordinary, popular or legal meaning], and [when] both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage. Parol evidence is admissible to establish the trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous, inasmuch as by reason of the usage the words are used by the parties in a different sense." (*Ermolieff* v. *R.K.O. Radio Pictures, supra,* 19 Cal.2d at p. 550.) Bawden's statement that these release forms, commonly used by insurance adjustors, are "routinely exchanged without any thought of their operation as third party beneficiary contracts" falls well short of establishing that there is a particular trade usage for the all encompassing language of the release. Moreover, there was no showing that Ticich, Martinez, or their attorneys were engaged in the insurance industry or intended the release to operate according to some particular trade meaning.

into any lawsuits in the first place (see e.g., *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 883-884 [225 Cal.Rptr. 159]) and viewed such an all-encompassing release as an added precaution against such eventualities. We must assume, therefore, that in the absence of any evidence to the contrary, the parties intended what is expressed in the writing, i.e., to release all other persons, firms and corporations.

Ticich argues that interpreting the agreement as a release of his claims against General Motors or any other unnamed entity is unconscionable and against public policy. Here again, Ticich simply failed to present evidence to raise a triable issue of fact regarding the claim of unconscionability. The only evidence submitted on this issue was a declaration by the attorney Ticich retained after he executed this release. This attorney declared that this release agreement was on a preprinted form which is the standard form used by insurance company adjustors. However, there was no showing made that Ticich was in an unequal bargaining position vis-à-vis Martinez at the time he executed this contract or that Martinez presented this contract to him on an "all-or-nothing" basis. To the contrary, Ticich and Martinez were individuals who were each represented by attorneys, and there is nothing in the record to indicate that these parties were in anything other than an equal bargaining positions. Indeed, we do not even know which party proposed this agreement. From all appearances, this term would seem to have been fully negotiable, and not adhesive. (Cf. *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817-819 [171 Cal.Rptr. 604, 623 P.2d 165].) Also, the provision appears clear, and Ticich has not specifically claimed any unfair surprise. Neither can we conclude that the terms are overly harsh or one-sided, or, as discussed above, that there was no justification for this provision. In short, the facts that we can glean from the record do not suggest the release agreement in general, or this particular term was unconscionable, either procedurally or substantively. (See *A & M Produce* v. *FMC Corp.* (1982) 135 Cal.App.3d 473 [186 Cal.Rptr. 11]; *Appalachian Ins. Co.* v. *McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 22-23 [262 Cal.Rptr. 716]; also see 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 31 et seq., p. 66 et seq.)

Ticich argues that the release is against public policy as expressed in the Restatement Second of Contracts section 195, subdivision 3 which provides that a contract term which exempts a seller of a product from liability for harm to a user or consumer is against public policy. This principle is not applicable to the release contract at issue which does not directly concern such an exemption.

Finally, we also reject Ticich's argument that General Motors lacks standing to enforce the release contract because it was not an intended

beneficiary of this contract. ■ It is not necessary that the contract identify the third party by name as long as such third party can show that it is one of a class of persons for whose benefit it was made. (*Steve Schmidt & Co.* v. *Berry* (1986) 183 Cal.App.3d 1299, 1313 [228 Cal.Rptr. 689].) ■ Having found that the subject release agreement does provide for the release of all tortfeasors, including General Motors, it follows that General Motors is among the class of persons for whose benefit the agreement was made and has standing to raise it as a bar to the present action.

General Motors is entitled to summary judgment based on the release agreement, Ticich having failed to present admissible evidence raising a triable issue of fact as to the effect of this agreement.

Accordingly, the petition for writ of mandate is granted.

The court has read and considered the record in this proceeding and has concluded that an alternative writ would add nothing to the presentation already made and would cause undue delay in bringing the action to trial. We therefore issue a peremptory writ in the first instance.[4] (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to set aside its order of June 25, 1992, denying the motion for summary judgment of General Motors Corporation in that action entitled James Ticich et al. v. State of California et al., case No. SCV243924, and to enter a new order granting said motion.

Hollenhorst, J., and McKinster, J., concurred.

---

[4]This court has, of course, considered *Ng* v. *Superior Court* (1992) 4 Cal.4th 29 [13 Cal.Rptr.2d 856, 840 P.2d 961] wherein our Supreme Court has discussed the circumstances where the issuance of a peremptory writ in the first instance is appropriate. We conclude that our utilization of the efficient peremptory writ procedure was appropriate in this case, for petitioner's entitlement to relief is based on well-settled principles of law applicable to contract interpretation and summary judgment motions. Publication of the opinion is warranted simply because we have applied these well-established principles to a set of facts which have not been the subject a published opinion in this state and which involve issues of continuing public interest.