[No. A093671. First Dist., Div. Four. Nov. 27, 2001.]

RICHA VAHLE et al., Plaintiffs and Appellants, v.
JILL E. BARWICK, Defendant and Respondent.

COUNSEL

Perry, Johnson, Murray, Anderson & Miller, Michael G. Miller and Jessica R. Flores for Plaintiffs and Appellants.

Law Offices of Barwick and Gill and Thomas B. Gill for Defendant and Respondent.

## OPINION

KAY, J.—Plaintiffs Richa and Louis Vahle allege their former attorney, defendant Jill E. Barwick, committed malpractice when she represented them in a personal injury lawsuit. The trial court held a release agreement between the Vahles and the defendant in the personal injury lawsuit barred any action for malpractice against Barwick. Though Barwick was not a party to the release agreement, the trial court found language in the agreement purporting to release all other persons, firms or corporations was unambiguous and benefited Barwick. The trial court granted Barwick's motion for summary judgment.

We conclude that whether the parties to the release agreement intended to release Barwick is a triable issue of fact. We reverse the judgment.

### BACKGROUND

The Vahles sued Silverado Country Club and Resort (Silverado) for damages allegedly resulting from a slip and fall by Richa Vahle on Silverado's property. Barwick represented the Vahles. Silverado prevailed at trial

and the court ordered the Vahles to pay over $60,000 in costs and attorney fees to Silverado.

The Vahles appealed from the judgment against them in the personal injury lawsuit. While Barwick pursued the appeal, the Vahles retained another attorney, Edward McCutchan, and asked him to attempt to settle the matter with Silverado. McCutchan was able to negotiate a settlement in which the Vahles agreed to dismiss their appeal and pay $26,000 to Silverado. In return, Silverado agreed to file a satisfaction of judgment and release abstracts of judgment it had recorded on property owned by the Vahles.

The settlement was recorded in a written "Settlement Agreement and Mutual Release" (the release agreement). The only parties to the release agreement were the Vahles and Silverado. One of the introductory "RECITALS" in the release agreement states: "Each party now desires to enter into the Agreement as a full compromise, release, settlement, satisfaction and discharge of any and all claims that it has or may have against the other in connection with this litigation."

But section 1.1 of the release agreement broadly provides: "For and in consideration of the terms set forth hereinafter, Silverado as to Vahle, and Vahle as to Silverado, [or] their successors, assigns, heirs, executors, administrators, beneficiaries, and any and all persons taking by and through them shall, each as to the other, hereby fully, completely, and forever release and forever discharge each other party, their agents, servants, assigns, employees, successors, principals, *and all other persons, firms or corporations, of and from any and all past, present or future claims, demands, obligations, actions, or causes of action regarding or related to this litigation. . . ."* (Italics added.)

In section 3.3 of the release agreement, the parties acknowledge that the terms of the release agreement "shall constitute a full and complete compromise and settlement of all claims and potential claims of Vahle with respect to the actions or inactions of Silverado in connection with the litigation." Section 3.4 provides that the release agreement shall "inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each party hereto."

Barwick's name does not appear in the terms of the release agreement, and a line for her signature approving the document as to content and form is blank. The Vahles signed and dated the release agreement on September 12, 1997.

The Vahles retained a third attorney and on November 17, 1997, filed their complaint for damages for professional malpractice against Barwick. They alleged, inter alia, that Barwick failed to give them an opportunity to accept settlement offers in the amounts of $75,000 and $50,001.

Barwick answered the complaint and filed a cross-complaint to recover costs she had advanced on behalf of the Vahles in the personal injury lawsuit. In her answer, she asserted the release agreement as an affirmative defense. She then moved for summary judgment on the ground that the release agreement discharged and released her from liability in connection with the personal injury lawsuit. She supported her motion with the release agreement, court documents from the personal injury lawsuit, and copies of correspondence between the Vahles and McCutchan.

In opposition to the summary judgment motion, the Vahles argued that Barwick was not a party to the release agreement and that they never intended to release her from liability for malpractice. Richa Vahle provided a declaration in which she stated that at no time was it her intent to relieve Barwick from any future claims for malpractice.

The trial court granted the motion for summary judgment, finding no ambiguity in the phrase "forever release and forever discharge each other party, their agents, servants, assigns, employees, successors, principals, and all other persons, firms or corporations, of and from any and all past, present or future claims, demands, obligations, actions, or causes of action regarding or related to this litigation." The court also found the declaration of Richa Vahle and a declaration from the Vahles' counsel were not competent evidence to demonstrate ambiguity in the phrase.

The Vahles moved for reconsideration of the trial court's ruling. They supported their motion with transcript excerpts from a deposition of the judge who presided over the personal injury lawsuit, and declarations from McCutchan and the attorney who represented Silverado. The general tenor of the judge's testimony was that Barwick's representation of the Vahles fell below the standard of care for a competent attorney. McCutchan and Silverado's attorney both declared it was not their intent to release Barwick from liability when they negotiated the settlement and drafted the release agreement.

The trial court denied the motion for reconsideration, ruling the Vahles had not demonstrated new or different facts, circumstances or law. The matter proceeded on Barwick's cross-complaint. When Barwick voluntarily dismissed her complaint without prejudice, the trial court entered a final judgment.

DISCUSSION

We independently review the record to determine whether Barwick was entitled to summary judgment. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

■ A moving party is entitled to summary judgment when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment based on an affirmative defense has the initial burden to show that undisputed facts support each element of the affirmative defense. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 467-468 [110 Cal.Rptr.2d 627].) The plaintiff need not produce any evidence until the defendant has established every element of his or her defense. (*Id.* at p. 468.)

Barwick was not a party to the release agreement; therefore, she can benefit from the agreement only if she was an intended third party beneficiary of the agreement. The Vahles contend that whether Barwick was an intended third party beneficiary of the release agreement is a triable issue of fact.

■ A release agreement containing boilerplate language that purports to excuse everyone in the world from liability can be enforced by persons who are not parties to the agreement. (*Lama v. Comcast Cablevision* (1993) 14 Cal.App.4th 59, 63 [17 Cal.Rptr.2d 224]; *General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 439-440 [15 Cal.Rptr.2d 622].) But as explained in a thorough and well-reasoned opinion from Division Three of this court, *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337 [87 Cal.Rptr.2d 856] (*Neverkovec*), the burden is on the third party to prove the parties to the release agreement intended to benefit the third party.

Release agreements are governed by the generally applicable law of contracts. (*Neverkovec, supra,* 74 Cal.App.4th at p. 348.) A third party's right to enforce covenants of a contract is predicated on the contracting parties' intent to benefit the third party. (*Ibid.*) It is not enough that a literal interpretation of the contract would result in a benefit to the third party. (*Ibid.*)

■ "Thus, to obtain summary judgment on the ground that a general release has discharged him from liability, a third party to the release

agreement must affirmatively show that the parties intended to release him. The burden of proof is on the third party, under both contract law and the summary judgment statute. [Citation.] Because the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release. . . . 'Whether a third party is an intended beneficiary . . . to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'" (*Neverkovec, supra,* 74 Cal.App.4th at p. 349.)

A literal reading of the part of section 1.1 of the release agreement releasing "all other persons" supports the trial court's ruling. But, as the Vahles argue and as *Neverkovec* counsels, the release agreement must be read as a whole. The other parts of the release agreement suggest the parties intended to release only the other party and persons in privity with the other party. Barwick was not in privity with Silverado. Nowhere, outside of the one clause in section 1.1, does the release agreement evidence an intent to benefit Barwick. At best for Barwick, the language releasing of "all other persons" creates an ambiguity in the contract. Further, the mere fact the release agreement does not mention Barwick or the potential malpractice claim creates an ambiguity under the circumstances of this case. None of the parties to the agreement have any discernable motive to release Barwick, and it strikes us as unusual that a personal injury settlement would include a release of an attorney malpractice claim. One would expect to see explicit language regarding such a release. (See *Appleton v. Waessil* (1994) 27 Cal.App.4th 551, 555-556 [32 Cal.Rptr.2d 676] [failure to name driver who caused accident in the release agreement created ambiguity].)

Our conclusion that summary judgment is not appropriate in this case is reinforced by the extrinsic evidence Barwick submitted in support of her motion for summary judgment. That evidence by itself, without even considering the evidence submitted by the Vahles, strongly suggests there was no intent to release Barwick from a malpractice claim.

Barwick supported her motion with a series of letters between the Vahles and McCutchan. The letters show the Vahles, on McCutchan's recommendation, intended to file a malpractice action against Barwick. In the first letter, dated June 6, 1997, written by McCutchan to the Vahles, McCutchan stated he was "reluctant to point the finger" at their attorney, but that he was "troubled" by what had transpired. In his next letter, dated June 11, he was

not so hesitant: "There is the possibility that Ms. Barwick may have malpracticed." The Vahles responded by asking McCutchan if it were possible to recoup some of their money without going back to court.[1]

In the next letter to the Vahles, dated July 16, 1997, McCutchan conveyed Silverado's proposal for settling the matter. McCutchan closed his letter by stating: "We have discussed the fact that you wish to resolve the judgment against you by Silverado Country Club before you think about a malpractice action against Jill Barwick." It appears McCutchan is referring to a discussion between himself and counsel for Silverado, though the letter is not clear on this point. Arguably the letter shows Silverado was aware of the Vahles' intent to pursue a malpractice action against Barwick.

Finally, in a letter of transmittal dated September 8, 1997, sent with the release agreement, McCutchan informed the Vahles that by signing the agreement all of their claims against Silverado would be resolved. He continued: "I understand that Mike Miller of the Senneff law firm in Santa Rosa in all likelihood will be representing you in a malpractice action against Jill Barwick. Your damages would potentially consist of, but are not limited to, the $75,000.00 settlement offer by the Silverado Country Club, the $26,000.00 that you paid to settle this case, my attorneys fees, interest thereon, and any and all monies that you advanced to Jill Barwick for the costs of the appeal. . . . I will assist Mr. Miller as much as I can in his anticipated representation of you."

The Vahles signed the release agreement and then filed their complaint against Barwick just over two months later.

In all fairness to the trial court, it did not have the advantage of the analysis set forth in *Neverkovec*. That decision was issued after the trial court made its ruling on the motion for summary judgment. Instead, Barwick cited and relied on *Lama v. Comcast Cablevision, supra,* 14 Cal.App.4th 59 and *General Motors Corp. v. Superior Court, supra,* 12 Cal.App.4th 435, as she does again on appeal. *Lama* and *General Motors* are fine as far as they go, but they are not controlling or even particularly instructive under the facts of the instant case. Interestingly, in both cases the trial courts denied the defendants' motions for summary judgment.

In *Lama,* the plaintiff was injured in an automobile accident. He sued the driver and the owner of the other vehicle, but then settled with both parties,

---

[1] The Vahles wrote: "It seems that Ms. Barwick is costing us a lot of money. At this point we feel that we should look at trying to get some of it back from her. We would really hate to have to go to court again for a malpractice suit against her. We have had enough of papers, letters, and courts. Is there another way?"

executed a release, and dismissed his complaint with prejudice. He agreed to release the defendants " 'and any other person, corporation, association or partnership' " charged with responsibility for his injuries resulting from the accident. (*Lama v. Comcast Cablevision, supra,* 14 Cal.App.4th at p. 61.) He then filed a complaint against the driver's employer. The trial court found the release agreement and dismissal barred the action against the employer, but only after a trial on the issue. (*Id.* at pp. 62-63.) The trial court denied the employer's motion for summary judgment, finding there were questions of fact as to the terms, extent and good faith nature of the release. The Court of Appeal found substantial evidence supported the trial court's findings and affirmed the judgment. (*Id.* at pp. 63-64.) The appellate court's opinion does not discuss whether the employer was a third party beneficiary of the release agreement. Instead, it agreed with the trial court that there had been no mutual mistake of fact as to the meaning of the release. (*Id.* at p. 63.)

*General Motors* involved an auto accident in which the plaintiff's wife died. The plaintiff settled with the driver of the other vehicle and released the driver and " 'any and all other persons, firms and corporations, whether herein named or referred to or not' " from all claims arising from the accident. (*General Motors Corp. v. Superior Court, supra,* 12 Cal.App.4th at p. 438.) The plaintiff than sued General Motors, the manufacturer of the car driven by his wife. The trial court denied General Motors' motion for summary judgment, but the Court of Appeal reversed and directed the trial court to grant the motion. (*Id.* at p. 444.) The Court of Appeal rejected the argument, based on Code of Civil Procedure section 877, that a general release must specifically identify all tortfeasors to be released.[2] (*General Motors Corp., supra,* 12 Cal.App.4th at pp. 439.) The appellate court found the language of the release at issue appeared "clearly and unambiguously to release every person or entity from liability to [plaintiff] arising from the described automobile accident." (*Id.* at pp. 440-441.) There was no evidence to show the parties or their attorneys did not intend the release to include General Motors. (*Id.* at p. 441.) The surrounding circumstances, concluded the appellate court, indicated the parties did intend to release General Motors. (*Id.* at p. 442.)

The import of *Lama* and *General Motors*, as we have already noted, is that a release agreement may bar an action against an unnamed third party.

---

[2]Code of Civil Procedure section 877, in pertinent part, provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater."

Barwick, however, must prove the Vahles and Silverado intended to benefit her. She argues Silverado intended to release her so that it would not become involved in any future malpractice action, but nothing in the record even hints of such a concern on the part of Silverado. (Compare *Lama v. Comcast Cablevision, supra,* 14 Cal.App.4th at p. 63 [evidence showed settling defendant shielded from future exposure to damages by releasing other parties who may have shared in the responsibility for the accident]; *General Motors Corp. v. Superior Court, supra,* 12 Cal.App.4th at pp. 442-443 [circumstances surrounding release agreement indicated settling defendant had incentive to include all potential tortfeasors within the release].)

Barwick also relies heavily on *Winet v. Price* (1992) 4 Cal.App.4th 1159 [6 Cal.Rptr.2d 554]. That case involved the settlement of a fee dispute between an attorney and his client. The attorney was a party to the release agreement. When the client later alleged the attorney committed malpractice, the trial court properly granted summary judgment because the release was intended to encompass all known and unknown claims concerning the relationship. (*Id.* at pp. 1164-1165.)

Other than stating general principles of contract interpretation, *Winet* has no application here. *Winet* was not a third party beneficiary case.

Barwick asks why the language releasing all other persons was included in the release agreement if it was not intended to release her. It may have been the parties' intent to release persons who might be jointly liable with Silverado for Richa Vahle's injuries—as was the case in *Lama* (the employer) and *General Motors* (the automaker). Barwick also points out that the release agreement released all claims "regarding or related to this litigation," which she contends necessarily includes her representation of the Vahles in the personal injury lawsuit. Barwick suggests the parties would have used the word "accident" or "incident" instead of "litigation" if they had not intended to release her. The simple answer is that the release agreement was intended, in part, to release the Vahles from liability for over $60,000 in litigation costs. The use of the word accident or incident would have been too narrow to release the Vahles.

Whether Barwick was an intended beneficiary of the release agreement is a triable issue of fact. We express no opinion on the Vahles' alternative arguments regarding mutual mistake or public policy on the release of attorney malpractice claims. It is also unnecessary to review the denial of their motion for reconsideration.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order denying Barwick's motion for summary judgment. The Vahles are awarded their costs on appeal.

Reardon, Acting P. J., and Sepulveda, J., concurred.