# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1673

PLATO FOUFAS and PLATO FOUFAS & CO.,

*Plaintiffs-Appellees,*

v.

STANLEY J. DRU,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 4995—**David W. McKeague**, *Judge.*

ARGUED OCTOBER 15, 2002—DECIDED FEBRUARY 5, 2003

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal requires us to consider the proper interpretation of a release. The parties, Foufas and Dru (we can ignore Foufas's corporation), are engaged in the business of managing Indian casinos. They joined forces in the management of casinos for two tribes, the Lummi tribe in Washington and the Sycuan tribe in California, but then had a falling apart that resulted in Foufas's suing Dru in a federal district court in Chicago, basing federal jurisdiction on diversity of citizenship. The parties settled the case by means of an agreement, which

the district court retained jurisdiction to enforce, in two parts. In the first part, Dru agreed to pay Foufas $275,000 in respect of the management of the Lummi tribe's casino, and in the second part he agreed to pay 50 percent of any money that Dru received in respect of the management of the Sycuan tribe's casino, Dru and the tribe being at odds over what the tribe owed. The settlement was made in 1998. The following year the parties entered into a further settlement agreement, which states that whereas "on or about January 1, 1999, the Parties have entered into a resolution of their business differences" and "desire to terminate any potential liability that may exist between them pursuant to such business dealings," the parties agree to release each other "from and against any and all claims, rights, debts" etc. "of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Parties hereto, or any of them, now own or hold, or have at any time heretofore owned or held, or may at any time hereafter own or hold." The release was dated January 22, 1999.

The reference to "on or about January 1, 1999" is to the fact that in December 1998 Dru had advised Foufas that the Sycuan tribe was prepared to settle the dispute over the casino management contract, and that the following month Dru and Foufas had met over the matter and had agreed that Foufas would obtain a one-half interest in a piece of real estate owned by Dru, who in addition would pay Foufas 50 percent of any money that he received in the future from the Sycuan tribe.

Dru contends that the broad language of the release extinguished not only part two of the 1998 settlement agreement, the part related to the Sycuan tribe, which Foufas concedes was superseded by the "on or about January 1, 1999" deal and was extinguished by the new

settlement agreement, the agreement of January 22 that we are calling the release, but also part one of the 1998 settlement, the part that related to Dru's agreement to pay Foufas $275,000 in respect of Foufas's management of the Lummi tribe's casino. Foufas disagreed with Dru's interpretation and moved the district judge—who, remember, had retained jurisdiction to enforce the settlement agreement—to order Dru to pay Foufas the $275,000. The judge agreed, and Dru appeals.

When a judge is interpreting his own order, such as a consent decree that he entered, his interpretation is entitled to greater weight than when he is interpreting a contract with the formation of which he had nothing to do. *United States v. Alshabkhoun*, 277 F.3d 930, 933-34 (7th Cir. 2002); *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994); *In re Chicago, Rock Island & Pacific R.R.*, 865 F.2d 807, 810-11 (7th Cir. 1988); *United States v. Board of Education of City of Chicago*, 717 F.2d 378, 382 (7th Cir. 1983); *Officers for Justice v. Civil Service Comm'n*, 934 F.2d 1092, 1094 (9th Cir. 1991); *Brown v. Neeb*, 644 F.2d 551, 558 n. 12 (6th Cir. 1981). Not all courts agree, see *County of Suffolk v. Alcorn*, 266 F.3d 131, 137 (2d Cir. 2001); *Holland v. New Jersey Dept. of Corrections*, 246 F.3d 267, 277-78 (3d Cir. 2001), though they do not explain their disagreement. Support for extending the principle to a settlement approved by the judge though not incorporated in a formal consent decree—the logic of the principle embraces that case—may be found in *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir. 1985); *id.* at 88 (concurring opinion), and in *Wilkinson v. FBI*, 922 F.2d 555, 559 (9th Cir. 1991), overruled on another ground, *Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995), though a statement denying the extension of the principle to settlement agreements is found, but without elaboration, in *United States v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2002).

The principle is not applicable here, however. Although the judge's order that is appealed was an order enforcing the 1998 settlement agreement that he had approved, the order is the product of the judge's interpretation of the 1999 release, which he had not approved, and so we do not rest decision on the judge's interpretive discretion. *South v. Rowe*, 759 F.2d 610, 613 and n. 4 (7th Cir. 1985); cf. *Amax Land Co. v. Quarterman*, 181 F.3d 1356, 1368 (D.C. Cir. 1999). Compare *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 152-53 (1991); *Goluba v. School District of Ripon*, 45 F.3d 1035, 1038 n. 5 (7th Cir. 1995); *South Shore Hospital, Inc. v. Thompson*, 308 F.3d 91, 97 (1st Cir. 2002); *Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C. Cir. 2000). An author may not be a privileged interpreter of his writings, but his interpretation is entitled to some weight. Judges are rarely the actual authors of the consent decrees that they sign or the (other) settlements that they approve, but having been present at the creation they may have insights into the meaning of the decree or other settlement that are denied to the appellate judges who review the judge's decision. (Or may not; their review may have been cursory, but we trust them not to claim to remember the circumstances of the formation of a settlement agreement if they do not.)

In holding that a consent decree is to be interpreted essentially as a contract, the Supreme Court was explicit that "the circumstances surrounding the formation of the consent order [=contract]" were among the aids to interpretation on which the court could rely. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). (The analysis applies with equal force to a setlement agreement.) If those circumstances are known to the judge at first hand, his interpretation comes to the reviewing court with added weight. But the rationale for deferential review fails when as in this case the judge's decision does

not turn on his interpretation of the agreement that he approved.

No matter; it is an easy case. Dru wants us to look only at the language of the release itself, and not at the "where-as" clauses that introduce it. We decline the invitation. To read language acontextually is an almost certain route to error. *AM Int'l, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 575, 577 (7th Cir. 1995); *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1013 (7th Cir. 1984) (en banc). Especially when the context is supplied by the very document that is being interpreted. The "whereas" clauses indicate that the context of the release is the parties' settlement of the second part of their dispute, the part concerning the Sycuan tribe's casino. Well, replies Dru, if that's the case, why didn't the parties just insert "except regarding the $275,000" in the release part of the document? The answer is that this would have implied that any other dispute the parties might have, now or in the future, would be subject to the release, even if it had nothing to do with the Sycuan tribe, because only the $275,000 issue had been excluded.

Dru misunderstands the architecture of a release. The releasing language must be very broad so that a party cannot, by merely refiling his claim or recasting it in other legal terms or embellishing it with new facts, escape the force of the release. The breadth of the release language in this case is not uncharacteristic, at least in releases governed like this one by California law. See, e.g., *Vahle v. Barwick*, 113 Cal. Rptr. 2d 793, 794-95 (App. 2001); *Wilshire-Doheny Associates, Ltd. v. Shapiro*, 100 Cal. Rptr. 2d 478, 482 (App. 2000); *Parsons v. Tickner*, 37 Cal. Rptr. 2d 810, 820 (App. 1995). But then there has to be *something*, supplied by other language in the agreement or sometimes by extrinsic evidence of context, to tie the

language to the circumstances out of which the parties' dispute arose. See *Neverkovec v. Fredericks*, 87 Cal. Rptr. 2d 856, 865-67 (App. 1999); *Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 (App. 1992); *Atalla v. Abdul-Baki*, 976 F.2d 189, 193 (4th Cir. 1992). That something was supplied by the "whereas" clauses, which made clear that the release concerned the disputes that had arisen out of the management contract for the Sycuan tribe's casino.

Any other interpretation would produce absurd results, which is a good reason for declining an invitation to read contractual (or statutory, or constitutional) language literally, as we had occasion to note recently in *Future-Source LLC v. Reuters Ltd.*, 312 F.3d 281, 284-85 (7th Cir. 2002). At argument we asked Dru's lawyer whether the release would prevent Foufas from suing Dru for battery if Dru punched Foufas in the eye, and to our surprise the lawyer said that it would. We can imagine the parties rising from the settlement table and Dru telling Foufas, "Now that you've signed the release, I can do with impunity (and immunity) what I've been wanting to do for a long time—and that is punch you in the face." And (according to Dru's lawyer) Foufas couldn't sue.

Enough said.

AFFIRMED.

RIPPLE, *Circuit Judge*, concurring. I join the judgment and, with the reservation expressed here, the opinion of the court.

I doubt the prudence of expressing, in what is admittedly dicta, a view on the appropriate degree of deference owed the interpretation of the trial judge who approved the settlement agreement. As my colleagues note, the issue is not entirely free from doubt, and resolution is not necessary to the decision in this case. All too often, dicta of this sort is treated as a settled principle in later cases, a result incompatible with our doctrines of stare decisis and precedent and often a destructive force in our collegial deliberations.

Here, my colleagues take the precaution of labeling the discussion as dicta and noting explicitly that it is not a controlling element in our decision today. It will be the responsibility of future panels to heed that cautionary language.

In all other respects, I join my colleagues' fine analysis of the problem before us.

A true Copy:

        Teste:

                                  _____

                                  *Clerk of the United States Court of*
                                  *Appeals for the Seventh Circuit*