**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ILA LOCAL 1588, Defendant–Appellant,**

Anthony Anastasio, John Barbato, George Barone, John Bowers, George Bradley, Thomas Buzzanca, ILA Local 1909, Santo Calabrese, Donald J. Carson, Harry Cashin, James Cashin, Anthony Ciccone, Joseph Colozza, Vincent Colucci, Ronald Capri, James Coonan, Harold Daggett, Doreen Supply Company, Inc., Tino Fiumara, Anthony Gallagher, Robert Gleason, John Gotti, Leroy Gwynn, ILA Local 1588, ILA Local 1588 Executive Board, ILA Local 1804–1, ILA Local 1804–1 Executive Board, ILA Local 1809, ILA Local 1809 Executive Board, Michael Coppola, ILA Local 1814 Executive Board, ILA Local 1814, ILA Local 1909 Executive Board, ILA Local 824, ILA Local 824

Executive Board, Kevin Kelly, Joseph C.F. Kenny, George Lachnicht, Gregory Lagana, Frank Lonardo, Venero Mangano, James McElroy, Metropolitan Marine Maintenance Contractors, Carlos Mora, New York Shipping Association, Nodar Pump Repair, Inc., Ralph Perello, Louis Pernice, Richard Pierce, Anthony Pimpinella, John Potter, Douglas Rago, Joseph Randazzo, Thomas Ryan, Anthony Salerno, Dominick Sanzo, Frank Scollo, Anthony Scotto, Alfred Small, Blase Terraciano, Defendants,

Waterfront Commission of New York Harbor, Third–Party–Defendant.

No. 03–6042.

United States Court of Appeals, Second Circuit.

Aug. 29, 2003.

James A. Cohen, Fordham University School of Law (Seymour M. Waldman, Vladeck, Waldman, Elias & Engelhard, P.C., on the brief), New York, NY, for Appellant.

Beth E. Goldman, Assistant United States Attorney, (James B. Comey, United States Attorney for the Southern District of New York, Sara L. Shudofsky, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

PRESENT: WALKER, Chief Judge, STRAUB, and POOLER, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Defendant-appellant ILA Local 1588 ("Local 1588") appeals from a final order of the district court finding Local 1588 in civil contempt of a 1992 consent decree, *United States v. Local 1804–1, International Longshoremen's Association,* 2003 WL 194584, 171 L.R.R.M. 3196 (S.D.N.Y. Jan.29, 2003) (*"Local 1804–1 I"*), and a second order appointing an administrator for Local 1588, *United States v. Local 1804–1, International Longshoremen's Association,* 2003 WL 221851 (S.D.N.Y. Jan. 30, 2003) (*"Local 1804–1 II"*).

In 1992, Local 1588 entered into a consent decree with the appellee United States of America. Provision 6 of the decree permanently enjoined Local 1588's current and future officers, agents, representatives, employees, and members from "engaging in conduct which constitutes or furthers an act of racketeering activity .... [or] knowingly associating with any member, associate or other individual involved in a La Cosa Nostra Organized Crime Family or any other organized crime group." Local 1588 itself was not named in this provision, but its conduct was the focus of the consent decree, and it is specified in various "whereas" clauses and most of the decretal provisions. The consent decree declares that Local 1588 has entered into this agreement as the representative of the Local 1588 membership. The only signatories to the consent decree, other than the Government, are the Local's president and counsel. Indeed, Local 1588 itself acknowledges that "the union can act only through its officers."

From the date of the signing of the decree, officers of Local 1588 blatantly and repeatedly violated its terms. John Angelone, president of Local 1588 from 1994 to 2002, testified that Joseph Lore, a known associate of the Genovese crime family, totally controlled Local 1588 until 1999, when a federal investigation ended Lore's control of Local 1588. That investigation resulted in the convictions of Lore, Angelone, Edward G'Sell (the former president and then executive vice president of Local 1588) and four other Local 1588 officers or employees for conspiracy to embezzle union funds. The convictions were based primarily on a salary diversion scheme in which the officers and employees of Local 1588 turned over half of their union salaries in cash to Lore. Lore also received kickbacks from vendors and contractors who provided services to Local 1588. G'Sell testified that even before the consent decree was signed in 1992, Lore was picking the individuals who would serve as officers of Local 1588.

Joseph Timpinaro replaced Angelone as president of Local 1588 in January 2002, but by May 2002, he and four other officers were indicted in New Jersey for conspiracy to commit racketeering offenses with organized crime figures, specifically by extorting money from members. Government surveillance has recorded Timpinaro discussing union matters with and receiving advice from Genovese crime family associate Nicholas Furina. At a district court hearing, Timpinaro acknowledged that he participated in this conversation and that he attended social functions with organized crime figures. Local 1588 does not dispute the foregoing basic facts.

In December 6, 2002, the government moved pursuant to Fed. R. Civ. Pro. 60(b) and the equitable powers of the court for appointment of an administrator to govern Local 1588. On that same day, the ILA, the national organization, appointed a trustee for Local 1588 and suspended the Local's scheduled elections, finding that Local 1588's officials "blatantly and repeatedly violated the terms of the decree and breached the trust of the union membership and recommending that charges be filed against Local 1588 alleging that Local 1588 through its officers ... violated the Consent Decree entered into by Local 1588." The district court decided to hold a contempt hearing, and after the hearing on January 16, 2003, it found "Local 1588, through its officers and members, blatantly and repeatedly violated the permanent injunctions of the Consent Decree," that Local 1588 was in civil contempt of the decree, *Local 1804–1 II*, 2003 WL 221851 at *1, and that the ILA demonstrated a "total lack of concern about the corruption in Local 1588 until it learned that it might be the subject of a government lawsuit."

*Local 1804–1 I*, 171 L.R.R.M. 3196, 2003 WL 194584 at *4. The court granted the government's application for the appointment of an administrator, concluding that this remedy was "necessary to achieve compliance with the Consent Decree and to prevent further violations of the decree." *Local 1804–1 II*, 2003 WL 221851 at *2. In addition to its contempt powers, the court also based its order on its "inherent authority." *Id.* at *2. Local 1588 argues that the district court's order was improper because the union is not specifically listed in Provision 6, the decretal provision that the court held had been violated, and because the order exceeded the court's inherent authority.

"[B]ecause consent decrees are injunctions, their modifications are reviewed for abuse of discretion only." *United States v. Sec'y of Hous. and Urban Dev.*, 239 F.3d 211, 216 (2d Cir.2001). Because a consent decree is a hybrid of a contract and an order, they are interpreted as contracts and enforced as orders. *Berger v. Heckler*, 771 F.2d 1556, 1567–68. As contracts, consent decrees are to be modified only rarely and cautiously. *See Sec'y of Hous. and Urban Dev.*, 239 F.3d at 216. But as an order, a consent decree "vests the court with equitable discretion to enforce the obligations imposed on the parties.... The court's interest in protecting the integrity of such a decree justifies any reasonable action taken by the court to secure compliance." *United States v. Local 359*, 55 F.3d 64, 69 (2d Cir.1995) (internal citations and quotation marks omitted); *see also Equal Employment Opportunity Comm'n v. Local 580*, 925 F.2d 588, 593 (2d Cir.1991) ("[T]hough a court cannot randomly expand or contract the terms agreed upon in a consent decree, judicial discretion in flexing its supervisory and enforcement muscles is broad .... including equitable remedies [which] exceed the confines of the consent judgment [and] are

reasonably imposed to secure compliance....")

In *Rufo v. Inmates of Suffolk County Jail*, the Supreme Court clarified its earlier precedents in adopting a more flexible rule for modifying a decree of injunctive relief. 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). *Rufo*, adopting the language of one our decisions, explained in a consent decree case that "the power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." *Id.* at 381 n. 6, 112 S.Ct. 748 (quoting *N.Y. State Ass'n for Retarded Children v. Carey*, 706 F.2d 956, 967 (2d Cir.1983)). Under *Rufo*, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in the circumstances warrants revision of the decree." *Id.* at 383, 112 S.Ct. 748. Modification may be warranted "when a decree proves to be unworkable because of unforeseen obstacles." *Id.* at 384, 112 S.Ct. 748. Such obstacles must be unforeseen, but not necessarily unforeseeable. *Id.* at 385, 112 S.Ct. 748. Although *Rufo* emphasizes the importance of flexibility in the context of institutional reform of public institutions, we have held that *Rufo's* permissive standard applies to institutional reform of non-governmental bodies, and specifically to the reform of unions. *See Patterson v. Newspaper and Mail Deliverers' Union*, 13 F.3d 33, 38 (2d Cir.1993).

The degree of continuous, blatant corruption in Local 1588 is a shocking and unforeseen obstacle to compliance with the decree that makes the decree as drafted unworkable in not covering the union in the provision held to have been violated. Eleven years of rampant racketeering was completely undeterred by the court's previous orders. At the time of the decree, Lore was actually in control of Local 1588, meaning that Local 1588, through its offi-

cers, entered the consent decree in bad faith unbeknownst to the court. Local 1588's bad faith and entrenched racketeering fundamentally changed the court's understanding of the severity of the problem and necessitated a sweeping remedy that arguably went beyond the explicit terms of the decree.

"[A] court has an affirmative duty to protect the integrity of its decree. This duty arises where one party threatens to frustrate the purposes of the decree." *Berger*, 771 F.2d at 1568 (alteration in original). In the consent decree, the whereas clauses recorded Local 1588's recognition of those purposes: "Local 1588 agrees that there should be no criminal element or La Cosa Nostra corruption of any part of the ILA or of Local 1588 .... [and] agree[s] that the purpose of this Consent Judgment is, inter alia, to ensure that Local 1588 shall hereinafter be maintained democratically, with integrity, for the sole benefit of its members, and without unlawful, outside influence." "Whereas" clauses indicate the parties' intent, and the consent decree must be read in that context. *See Foufas v. Dru*, 319 F.3d 284, 287 (7th Cir.2003). Local 1588, through its officers, employees, and many members, has frustrated those purposes to which it had obligated itself, and in so doing, it has threatened the integrity of the court system. Accordingly, the court was well within its discretion, under its inherent equitable authority, to protect its integrity and promote the goals of its order by appointing an administrator for Local 1588.

We have reviewed Local 1588's other claims and find them to be without merit.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.