Filed 5/21/24  Seraphim Energy Group v. HSZ Energy CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SERAPHIM ENERGY GROUP INC., <br><br>   Plaintiff and Respondent, <br><br> v. <br><br> HSZ ENERGY INC., et al, <br><br>   Defendants and Appellants. | A165961, A166269 <br><br> (County of Alameda Super. Ct. No. RG21088570) |

  This appeal is from a June 2022 judgment that requires appellants, HSZ Energy Inc. and its affiliates (defendants), to pay respondent, Seraphim Energy Group, Inc. (Seraphim), more than $3.75 million in damages for breach of two promissory notes.  Defendants contend the trial court erred by (1) refusing to stay this action pending completion of an arbitration involving these parties, and (2) granting Seraphim summary judgment.  Rejecting these contentions, we affirm the judgment.

          **BACKGROUND**

  Seraphim is an importer of solar panels, and defendants were their suppliers.  In February 2021, Seraphim filed a complaint for breach of contract against defendants, alleging the following facts:  On April 3, 2020, the parties executed a promissory note and security agreement pursuant to

1

which Seraphim made a loan of $1.5 million and defendants agreed to repay the loan with interest by April 18, 2020 (the April 2020 note). On May 1, 2020, the parties executed a promissory note and security agreement pursuant to which Seraphim made an additional loan of $1,054,480 and defendants agreed to repay the loan with interest by May 15, 2020 (the May 2020 note). Defendants breached their obligations under both notes by failing to make payments that were due. For breach of the April 2020 note, Seraphim sought compensatory damages in excess of $1,825,000, and it sought an additional award of more than $940,000 for breach of the May 2020 note.

Copies of the April 2020 note and May 2020 note were attached to the complaint. Both notes refer to Seraphim as the " 'Payee' " and defendants as the " 'Maker,' " and they contain many identical terms, including the parties' agreement that payments due under the notes were to be made with U.S. currency, in cash or by wire transfer, "without reduction by reason of any set-off, defense or counter-claim whatsoever." Rights and restrictions regarding offsets were further addressed in numbered paragraphs 7 and 9 of both promissory notes. Paragraph 7, titled "<u>Payment; Offset</u>," states: "Payee may elect in its sole discretion to offset any or all principal, Interest or other amounts due to Payee under this Note against any amounts that may become due by Payee to Maker from and after the date of this Note." Paragraph 9, titled "<u>Payments by Maker</u>," states: "Except as otherwise provided herein, all payments made by Maker hereunder will be made without setoff, counterclaim or other defense."

In Paragraph 17 of each note, titled "<u>Governing Law; Venue</u>," the parties agreed to be governed by California law and that state or federal

courts in Alameda County had exclusive jurisdiction to resolve disputes arising out of these agreements.

On July 22, 2021, defendants filed their joint answer to the complaint, which consisted of a general denial and twelve affirmative defenses. As their eleventh affirmative defense, defendants alleged: "Plaintiff may not recover in damages here due to its payment obligations to Defendants which operate as an offset to any obligation Defendants may have to Plaintiff." Defendants' twelfth affirmative offense was that Seraphim was required to assert its contract claims as "compulsory counterclaims" in an arbitration that had been "commenced between the parties before the International Chamber of Commerce."

In November 2021, Seraphim filed a motion for summary judgment pursuant to which it argued that the undisputed facts show this is "a straightforward case involving a group of borrowers who agreed to be jointly and severally liable under two promissory notes and later failed to repay the amounts owed under those notes." Regarding defendants' eleventh affirmative defense, Seraphim relied on the plain language of the promissory notes as evidence that defendants could not offset their payment obligations against other claims they had against Seraphim. Regarding defendants' twelfth affirmative defense, Seraphim argued that its claims are not subject to arbitration. Seraphim acknowledged that in July 2021, some defendants had filed a request for arbitration with the International Chamber of Commerce International Court of Arbitration (the ICC arbitration), but it argued that the ICC arbitration involved claims under a "separate supply agreement" that was unrelated to this case. Seraphim relied on the promissory notes as evidence that courts in Alameda County had exclusive jurisdiction over this case.

In December 2021, defendants filed a motion to stay all proceedings in this action. Defendants based their motion on Title 9 United States Code section 3 of the Federal Arbitration Act (FAA), and section 1281.4 of the California Arbitration Act (Code Civ. Proc., § 1281.4).[1] They argued that both statutes required the trial court to stay this action due to overlapping issues with a dispute that had been submitted to ICC arbitration pursuant to a "Master Module Supply Agreement" entered into by Seraphim and two of the defendants (the supply agreement).

Concurrently with their stay motion, defendants filed a motion for an order sealing unredacted versions of their stay motion and a supporting declaration, to avoid public disclosure of allegedly confidential information pertaining to the ICC arbitration. Pursuant to the parties' stipulation, a hearing on Seraphim's summary judgment motion was continued for the court to first rule on defendants' motions.

On January 13, 2022, the court held a hearing on defendants' motions, and the following day issued two orders. In one order, the court granted defendants' motion to seal "confidential portions" of their stay motion and supporting declaration. (Citing Cal. Rules of Court, rules 2.550 & 2.551.) The sealing order was later expanded to cover confidential information in defendants' reply memorandum and supporting evidence.[2]

---

[1] Subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] Defendants obtained several sealing orders during the trial court proceedings, which led to confusion and delay in compiling the record on appeal. Pursuant to the parties' joint motion, this court instructed the superior court clerk to prepare an amended Clerk's Transcript containing separate volumes of material that defendants filed under seal, ostensibly pursuant to the trial court's sealing orders.

We have significant concerns about the scope of the sealing orders, particularly in light of the way defendants have construed them. However,

4

In the other order dated January 14, 2022, the court denied defendants' motion to stay this action. The court reasoned that defendants were relying on an arbitration provision in the supply agreement, which was a "separate" agreement relating to the supply of solar panels. Defendants submitted evidence that they had initiated an ICC arbitration pursuant to the supply agreement. However, the promissory notes at issue in this case do not contain any reference to the supply agreement or its arbitration provision, instead specifically designating the superior court and federal court in Alameda County as proper venues for resolving disputes regarding the promissory notes. Consequently, the court found that it had "no obligation under section 1281.4 to stay this proceeding while Defendants pursue the arbitration under the separate [supply agreement]," and denied the request for a stay.

The record on appeal does not establish when the superior court clerk served the respective January 14 orders on the parties. Suffice it to say that the parties may not have been aware until March 2022 that defendants' stay motion was denied.

Meanwhile, on January 20, 2022, defendants filed opposition to the pending summary judgment motion. Defendants argued that Seraphim failed to produce evidence that it performed all of its obligations under the promissory notes prior to filing suit. Defendants also argued there were triable issues of material fact as to damages because defendants had alleged an offset defense, which was supported by evidence that Seraphim owed

---

our disposition of this appeal does not require us to rely on evidence that may have been improperly sealed. For this reason, we will not further delay disposition of this appeal by considering whether to unseal records on our own motion. (See Cal. Rules of Court, rule 8.46.)

defendants substantial sums pursuant to purchase orders entered into under the supply agreement.

On March 24, 2022, defendants filed a document titled "Notice of Supplemental Authority in Support of Defendants' Motion to Stay." Defendants described their supplemental authority as the ICC arbitrator's "Procedural Order No. 3, dated March 17, 2022." Defendants did not articulate a theory of relevancy or address the substance of the arbitrator's procedural order, which they filed entirely under seal.

On March 29, 2022, the court began a hearing on the summary judgment motion after defendants contested a tentative ruling granting the motion. At the outset, the court was advised about the delay in service of the January 14 order denying the stay motion, and defendants represented they had been unaware that motion had been denied until after they submitted their supplemental authority. Defendants asked the court to reconsider the order denying their request for a stay, and the summary judgment hearing was then continued so the parties could brief the reconsideration motion and the court could address it in tandem with the summary judgment motion.

Defendants filed their motion for reconsideration on April 5, 2022. In that motion, defendants did not discuss the substance of the ICC arbitrator's March 2022 procedural order, but they argued it was new evidence entitling them to a stay because it showed that the arbitrator had authority to decide threshold issues of arbitrability. Defendants based their motion on the FAA and authority construing provisions of that federal arbitration statute, including *Henry Schein, Inc. v. Archer & White Sales, Inc.*, (2019) 139 S.Ct. 524, 530 (*Schein*). They argued that the trial court was required by law to stay Seraphim's action until either the arbitration was completed, or the

6

arbitrator decided that claims pertaining to the promissory notes were not arbitrable.

On April 28, 2022, the court heard argument on defendants' reconsideration motion and Seraphim's summary judgment motion. On May 20, the court issued separate orders denying reconsideration and granting summary judgment. This timely appeal followed.[3]

## DISCUSSION

### I. The Trial Court Did Not Err By Denying the Request for a Stay

Defendants contend the trial court erred by refusing to stay this action due to the ICC arbitration. They concede that this issue is governed by California arbitration law. (See e.g., *Los Angeles Unified School Dist. v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, 482 [if parties to arbitration agreement do not expressly adopt FAA procedural provisions, California procedures apply].)

Defendants base their claim of error on section 1281.4, which states: "If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending

---

[3] Defendants filed separate notices of appeal from a judgment entered against them on June 14, 2022, and an amended judgment filed on August 5. The appeals were consolidated.

7

before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

A trial court's decision whether to stay an action at law under section 1281.4 is reviewed for abuse of discretion. (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547; *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101.) We find no abuse of discretion under the circumstances presented here. By its plain language, section 1281.4 provides for a stay of litigation when a court of competent jurisdiction has ordered—or is deciding whether to order—arbitration of an issue that is involved in the action. Here, the trial court did not order arbitration of any issue in this case, nor was it asked to consider issuing such an order. Defendants cite no authority entitling them to a stay under these circumstances. To the contrary, "section 1281.4 applies only when a court has ordered parties to arbitration, the arbitrable issue arises in the pending court action, and the parties in the arbitration are also parties to the court action." (*Leenay v. Superior Court* (2022) 81 Cal.App.5th 553, 559; see e.g., *Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146 [after granting order to compel arbitration, court erred by denying stay under section 1281.4].)

Defendants posit that an order compelling arbitration was unnecessary since the ICC arbitration was already pending when they filed their request for a stay. This argument begs the question whether the underlying action

8

involves an issue that is arbitrable in the ICC arbitration, a question that defendants did not ask the trial court to decide. Defendants' reliance on *Seidman & Seidman v. Wolfson* (1975) 50 Cal.App.3d 826 is misplaced. In that case arising out of a dispute among partners in an accounting practice, one defendant moved for a stay of proceedings due to a pending arbitration in New York. (*Id.* at pp. 829–830.) Although the stay request was not accompanied by a formal motion to compel arbitration, the trial court made express rulings regarding the arbitrability of each cause of action in the California lawsuit. (*Id.* at p. 832.) Nothing comparable happened here. Instead, the record shows that defendants made a strategic decision not to seek an order compelling arbitration of Seraphim's breach of contract claims. After being served with the complaint, they initiated a voluntary arbitration pursuant to the supply agreement, which they used as the basis for requesting a stay, without establishing a relevant connection between the two matters that would justify the relief they sought.

Defendants contend that it makes no difference whether the breach of contract claims are themselves subject to arbitration because defendants established that these claims are sufficiently related to the ICC arbitration to mandate a stay. According to this argument, defendants' liability under the promissory notes cannot properly be adjudicated without accounting for Seraphim's liability to them for unpaid purchase orders, and since the purchase orders are subject to arbitration, this case must be stayed until the arbitration is completed. We disagree with this logic; the mere fact that defendants' have alleged arbitrable claims under the supply agreement does not prove that resolving the claims in this case would interfere with the arbitration. Evidence that was before the trial court supports a contrary conclusion. The promissory notes contain defendants' express agreement

9

that (1) their payment obligations under the notes were not subject to "setoff, counterclaim, or other defense," and (2) Seraphim had "sole discretion" to offset any amounts due under the notes against payment obligations the Seraphim owed to defendants. Moreover, the promissory notes contain no arbitration clause and make no reference to the supply agreement that defendants used to initiate the ICC arbitration. This evidence amply supported the trial court finding that defendants' liability for breach of the promissory notes was a separate issue from disputes arising under the supply agreement.

In other words, defendants' theory that this lawsuit and the ICC arbitration involve "overlapping" issues conflates two distinct issues: a determination of defendants' liability for breach of these contracts, and a determination of their claim of a right to offset the amount of this judgment debt (once it is fixed) against Seraphim's alleged liability arising under the supply agreement. Because resolution of the first issue does not require any consideration of the second, the controversy subject to arbitration is severable and does not require a stay of this case.

Defendants make two other cursory arguments in support of their contention that California law entitles them to a stay. First, they invoke public policy favoring arbitration. "There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481.) Here, as we have discussed, defendants did not seek to enforce an agreement to arbitrate. Instead, they sought to forestall adjudication of Seraphim's claims against them without

10

proving or even contending that the parties had agreed to arbitrate those claims.

Second, defendants rely on section 431.70, which allows the offsetting of cross-demands for money that existed at "any point in time" even if one of the claims has become time-barred. Defendants take the position that, by invoking section 431.70 as an affirmative defense, they unilaterally created a connection to the ICC arbitration, which required the trial court to stay this action. We are not persuaded. Section 431.70 "does not create a substantive right to raise setoff as a defense to a claim for monetary relief, but merely describes the procedures to be followed in raising this defense." (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744.) Moreover, "a party may waive the statutory right of setoff." (*Jess v. Herrmann* (1979) 26 Cal.3d 131, 143.) Here, the promissory notes stated expressly that defendants' payment obligations were not subject to "setoff, counterclaim or other defense."

Taking a different tack, defendants contend that "the determination whether the [promissory] notes are subject to arbitration is presently before the arbitrator." According to this argument, the arbitrator's procedural order submitted in support of defendants' motion for reconsideration is affirmative proof that the arbitrator has exclusive jurisdiction to decide threshold issues of arbitrability, and, therefore, a stay of the causes of action asserted by Seraphim in this case is mandatory.

We review the trial court's ruling on defendants' motion for reconsideration under the abuse of discretion standard. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) Section 1008, subdivision (a) requires that a motion for reconsideration be "based upon new or different facts, circumstances, or law." Here, the trial court found that the ICC arbitrator's procedural order was not a new fact in support of the stay

11

motion. The court reasoned that the procedural order contained "no factual or legal determination," but simply deferred ruling on defendants' theory that the arbitrator's jurisdiction extends to defendants' offset rights relating to the promissory notes. Defendants fail to show any abuse of discretion in the court's ruling.

As an initial matter, defendants concede that the arbitrator did not make any substantive ruling in its March 2022 procedural order. But more fundamentally, as the trial court found in its order denying the reconsideration motion, the "question of whether the promissory notes are arbitrable" was not for the arbitrator to decide. "[W]here a party seeks to arbitrate a dispute that arises from a contract without an arbitration clause, the court is not required . . . to defer to the arbitrator on the threshold determination of arbitrability. [Citations.] Rather, where the party moving to compel arbitration asserts a different contract with an arbitration provision shows the parties' intent to arbitrate, the question of the parties' intent is for the court to resolve." (*Banc of California, National Assn. v. Superior Court* (2021) 69 Cal.App.5th 357, 369; see *id*. at p. 361 [whether parties agreed to arbitrate dispute arising from loan documents that did not contain arbitration clauses was "a question the court must decide in the first instance"]; see also *Bautista v. Fantasy Activewear, Inc*. (2020) 52 Cal.App.5th 650, 656*; Moritz v. Universal City Studios LLC* (2020) 54 Cal.App.5th 238, 248.) Thus, if defendants had sought a determination regarding the arbitrability of Seraphim's contract claims, that would have been an issue for the trial court to decide.

Defendants dispute that the trial court had authority to decide whether this case involves an arbitrable issue, contending that the parties delegated that authority solely to the ICC arbitrator. To support this theory,

12

defendants rely on cases decided under the FAA, which hold that parties to an arbitration agreement may agree to delegate to the arbitrator threshold issues of arbitrability, and that courts must respect such a delegation if it established by " 'clear and unmistakable' " evidence. (*Schein*, *supra*, 139 S.Ct. at p. 531.) Here, defendants argue, the parties necessarily agreed that the arbitrator would decide what issues are arbitrable by agreeing to follow ICC arbitration rules, which allegedly authorize the arbitrator to make those kinds of decisions.

We reject defendants' delegation theory because it improperly focuses on the supply agreement that defendants used to initiate the ICC arbitration rather than the promissory notes that are the subject of this lawsuit. In this case, defendants sought to stay a California action that alleges breach of promissory notes that contain neither an arbitration provision nor a reference to the supply agreement, and that expressly confer exclusive jurisdiction on a court in Alameda County to resolve any dispute relating to their enforcement. Moreover, as defendants concede elsewhere in their appellate brief, their stay request was governed by California law, not the FAA. [4]

In summary, the record shows that defendants moved for a stay of Seraphim's action for breach of the promissory notes without seeking an order to compel arbitration of any issue pertaining to Seraphim's causes of

---

[4] We deny defendants' request for judicial notice of Article 6 of the 2021 ICC Arbitration Rules. Defendants fail to demonstrate that this ICC rule is relevant to a material issue in this appeal. (*People ex rel Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 [a valid theory of relevancy is a "precondition to the taking of judicial notice"].)

Seraphim has also filed a request for judicial notice, which we deny. Seraphim seeks judicial notice of the arbitrator's final award in the ICC arbitration, arguing it is relevant to show that any error in denying defendants' motion for a stay was harmless, an issue we need not reach.

action.  They also failed to show that a material issue affecting the disposition of this case is subject to arbitration.  Under these circumstances, we reject defendants' contention that a stay of this action was mandatory under section 1281.4.

## II.  Summary Judgment Was Properly Granted

"We review a grant of summary judgment de novo, effectively assuming the role of a trial court, and applying the rules and standards that govern a trial court's determination of a motion for summary judgment."  (*Building Industry Assn. of Bay Area v. City of San Ramon* (2016) 4 Cal.App.5th 62, 73.)  Summary judgment may be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

### A.  Seraphim Carried Its Initial Burden of Proof

A plaintiff moving for summary judgment carries an initial burden of proof to produce evidence to establish each element of the cause or causes of action.  (§ 473c, subd. (p)(1); *Aguilar*, *supra*, 25 Cal.4th at p. 853; *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 564 (*Oldcastle*).)  "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff."  (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.)

To carry its initial burden of proof in this case, Seraphim relied on the promissory notes and related payment schedules as well as the declaration of its Chief Operating Officer, Jun Zhuge.  Zhuge attested to the following facts: Defendants did not make any payments under either promissory note.  After

14

both notes came due, Seraphim exercised its right to offset the principal amount of the May note by approximately $271,500. Seraphim gave defendants required notices pertaining to their default prior to filing this lawsuit. After filing this action, Seraphim received a request for arbitration from some of the defendants, which was dated July 9, 2021. In that request, defendants alleged claims under the supply agreement that were not related to the promissory notes, nor to Seraphim's breach of contract claims. Seraphim also submitted a supplemental declaration from Zhuge after defendants objected that his statements about giving defendants' notice were conclusory hearsay inadmissible to prove the content of written notices. The supplemental declaration attached copies of the notices.

Like the trial court, we conclude Seraphim carried its initial burden of producing evidence to establish each element of its breach of contract claims, and on appeal defendants do not argue otherwise.

**B. Defendants Did Not Raise A Triable Issue of Material Fact**

Because Seraphim made the requisite showing to support its summary judgment motion, the burden shifts to defendants to prove that there is a triable issue of material fact as to the breach of contract claims or a defense thereto. (*Aguilar*, *supra*, 25 Cal.4th at p. 849, *Oldcastle*, *supra*, 170 Cal.App.4th at p. 564.) There is a triable issue of material fact if a reasonable trier of fact could find the underlying material fact in favor of the opposing party. (*Aguilar*, at p. 850.)

**1. Defendants' Evidence**

In opposing summary judgment defendants submitted a declaration of their senior executive officer, Hui Huang, which incorporated several exhibits. Huang attested to the following facts:

15

Defendants are in the business of manufacturing, supplying, and transporting solar panels. Their business relationship with Seraphim began in January 2019, when Seraphim placed an order to purchase solar panels. The following September, Seraphim advised defendants that it was negotiating a "big deal" with a third party (the CIM deal), and would need defendants to manufacture a large quantity of solar panels in a short amount of time. That fall or winter, Seraphim asked defendants to increase their manufacturing capacity to facilitate the CIM deal. Seraphim "insisted" that if defendants undertook the expansion, Seraphim would place orders for the CIM deal and provide "future high quantity purchase orders." Defendants spent more than $6 million to expand their production lines "in anticipation" of fulfilling the purchase order for the CIM deal and other future orders Seraphim "promised" to place.

Meanwhile, in June and November 2019, Seraphim placed two purchase orders that were unrelated to the CIM deal. Defendants filled the orders and shipped the solar panels to ports in Newark and Baltimore, where they arrived between January and March 2020. Before defendants made these shipments, they used the solar panels as collateral for a loan they obtained from United Renewable Energy Co., Ltd. (URE). They had intended to use profits from the CIM deal to pay off the loan. However, in around February 2020, defendants learned that the "CIM Deal would not be proceeding," which was a shock and surprise. Defendants experienced cash flow problems and were unable to "fully repay the URE Loan." URE placed a hold on the solar panels that had been shipped to Newark and Baltimore to fulfill Seraphim's June and November 2019 purchase orders. Seraphim wanted URE to release the shipments and discussed advancing defendants

16

sums to be documented by promissory notes that would be used to pay off the URE loan.

Seraphim's senior officer, Jun Zhuge, let Huang know that Seraphim wanted to "solidify its business relationship" with defendants, and they discussed, the supply agreement as a way to do that "going forward." The parties negotiated the terms of the supply agreement during the same time period that they negotiated the terms of the promissory notes. Huang viewed the documents as "one transaction," and the supply agreement as the "key document." Between May and October 2020, the parties entered into five purchase orders pursuant to the supply agreement, for a total amount of more than $5 million. Seraphim directed that approximately $271,500 of their total obligation was to be offset against defendants' payment obligations under the promissory notes. However, it allegedly failed to pay the balance due for these shipments.

In "later months," the parties discussed offsetting defendants' obligations under the promissory notes against monies Seraphim owed to defendants. Defendants believed they were on course to resolve these issues and were "again shocked and surprised" when Seraphim filed suit. Defendants believed the parties always intended to offset defendants' obligations under the promissory notes against Seraphim's obligations under the supply agreement. In July 2021, defendants initiated the ICC arbitration to recover from Seraphim the unpaid amount of its purchase orders.

### 2. Analysis

Defendants contend their summary judgment evidence creates a material factual dispute regarding the scope of offset provisions in the promissory notes and whether those notes incorporated the supply

17

agreement. For clarity, we address separately, the two parts of this erroneous argument.

On this record, there is no material dispute regarding the scope of the promissory note's offset provisions. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) By the same token, when the "contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . ." (*Id.*, § 1639.) Here, the promissory notes contain clear unequivocal language that defendants' promise to pay amounts due under the notes was unqualified, and that Seraphim had sole discretion to offset amounts due under the notes against any amount that Seraphim owed defendants.

Defendants ignore the clear language in these contracts. Contending that the offset terms mean something different from what they say, defendants rely on conclusory assertions in Huang's declaration that defendants hoped and believed their payment obligations under the notes would be offset by Seraphim's future purchase orders. But defendants produced no evidence that Seraphim shared this understanding, let alone agreed to be bound by it. Governing rules of statutory interpretation require courts to give effect to the *mutual* intention of the contracting parties by interpreting contract terms in accordance with their plain meaning. (*U.S. Bank National Assn. v. Yashouafar* (2014) 232 Cal.App.4th 639, 646.) " 'Courts will not strain to create an ambiguity where none exists.' " (*Ibid.*) When, as here, "contractual language is clear and explicit, it governs." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264, citing Civ. Code, § 1638.)

Further, we see no triable issue as to whether the promissory notes and supply agreement were a single contract. The notes make no reference to the supply agreement, contain a California choice of law provision, and confer exclusive authority on courts in Alameda County to enforce obligations relating to the loans that were made pursuant to those contracts. The supply agreement, which pertains to orders to purchase solar panels, makes no reference to the promissory notes, and it contains an arbitration provision.[5]

Defendants rely on Huang's assertion that the promissory notes and supply agreement were "one transaction" and that the supply agreement was the "key document." However, "an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions.'" (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.) And a party's subjective beliefs do not create a triable issue of material fact. (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994; *Knapp v. Doherty* (2024) 123 Cal.App.4th 76, 99; *General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 442.)

Defendants also rely on several emails that Seraphim's director of operations sent to an employee of one of the defendants in March 2020. The emails reflect that the parties discussed whether purchase orders placed by Seraphim during that time period would be covered by the supply agreement,

---

[5] The trial court granted defendants' motion to redact *confidential* information pertaining to their business from the summary judgment evidence. Defendants interpreted that sealing order as permission to file the entire supply agreement under seal, then elected to disclose parts of the agreement that facilitated their arguments. We disagree with defendants' interpretation of the sealing order, but in any event, defendants themselves discuss the supply agreement's arbitration provision in publicly filed documents. They also concede that the supply agreement contains no reference to the promissory notes.

the terms of which were still being discussed.  One email referenced some of the terms of the promissory notes, and included this statement:  "Lastly, for all above to happen, please sign back the [supply agreement] and make sure the mentioned containers gets released this week, on time."  In his declaration, Huang cited this email as proof that defendants' execution of the supply agreement was a "mandatory condition" before Seraphim would agree to the promissory notes.  That is not a plausible interpretation of the email.

Furthermore, even if we were to assume that the promissory notes are not fully integrated, defendants cannot rely on extrinsic evidence to *contradict* the setoff provisions in the promissory notes.  A "collateral agreement will be looked to only insofar as it does not directly contradict the express terms of the writing." (*Software Design & Application, Ltd. v. Price Waterhouse* (1996) 49 Cal.App.4th 464, 470.)  Defendants' own authority confirms this controlling legal principle. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367.)  *FPI* involved an "amorphous controversy" arising out of complex real estate deal involving multiple parties and issues. (*Id*. at p. 376.)  As pertinent here, the *FPI* court affirmed a grant of summary judgment to the plaintiff in an action for breach of a promissory note. (*Ibid*.)  In reaching that disposition, the court accepted the defendants' contention that the promissory note was a partially integrated agreement, but nevertheless found that extrinsic evidence of a collateral oral agreement was inadmissible because the alleged additional term was inconsistent with the terms of the written note. (*Id*. at pp. 396–397.)  So too here; even if we accept defendants' (unsupported) premise that the promissory notes are not fully integrated, defendants cannot use the collateral supply agreement to contradict the express terms of the promissory notes, which confer sole

20

discretion on Seraphim to offset defendants' payment obligations against debts Seraphim owed to defendants.

Finally, defendants contend that reading the supply agreement and promissory notes together creates a material dispute as to whether issues pertaining to offsets needed to be resolved in the ICC arbitration. It is not clear what offset issues defendants are referring to in making this broad claim. Defendants never took the position that Seraphim's claims for breach of the promissory notes must be arbitrated, as evidenced by their decision to seek a stay without moving to compel arbitration in this case. Moreover, defendants failed to raise a triable issue of material fact as to their offset defense, as the promissory notes confer sole authority on Seraphim to decide whether to offset defendants' payment obligations under the notes, and the evidence regarding offsets that Seraphim elected to apply was not disputed. Defendants did produce evidence that Seraphim also owed them money, but that evidence has no bearing on the issues before the court on summary judgment for all the reasons we have already discussed.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

TUCHER, P. J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*Seraphim Energy Group, Inc. v. HSZ Energy Inc. et al.* (A165961/A166269)

21